BRANDI CHIAPELLI, by her Mother and Next Friend, Vicki Ashton, Plaintiff-Appellee, v. VITO VIVIANO, Defendant-Appellant.

Fifth District   No. 5—91—0014

Opinion filed March 13, 1992.

Michael R. Bilbrey, of Bono, Goldenberg, Hopkins & Bilbrey, P.C., of Wood River, for appellant.

H. Carl Runge, Jr., of Law Offices of H. Carl Runge, Jr., Ltd., of Collinsville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Brandi Chiapelli was born November 28, 1972. In 1974, her mother, Vicki Chiapelli (hereinafter referred to as Vicki Ashton), filed a paternity action against Vito Viviano, alleging that he was Brandi's father. Ashton and Viviano entered into a stipulation wherein Vito denied paternity but consented to a court-approved settlement which provided that he would pay Ashton $3,000 to dismiss the case. On August 7, 1974, the court approved the settlement and ordered that any parental interest Viviano had in Brandi Chiapelli was terminated. The substantive provisions of the 1974 order are as follows:

> "This cause comes on to be heard and the Court having considered the evidence and the argument of counsel and being fully advised in the premises, and the Court having further examined the Stipulation and agreement entered into between the parties, the Court finds as follows:
>
> 1. Said stipulation and agreement is fair and reasonable and should be approved by this Court.
>
> 2. That defendant denies paternity in this proceedings [*sic*] and that his liability in connection with said paternity is therefore disputed between the parties.

3. That it is in the best interests of the child that plaintiff have sole and exclusive custody of said child and defendant has waived any claims he might have as natural father of said child and agreed and consented to the adoption of the child by any person or persons or by any agency and waives service of process on him in any adoption proceedings and agreed that immediate default may be taken against him in any such proceedings.

4. That the financial security of the child, Brandy [*sic*], is adequately provided for and that the child and mother are not likely to become public charges.

IT IS THEREFORE ORDERED:

1. That the stipulation entered into between the parties shall be and the same is hereby approved and that the defendant is ordered to pay to the plaintiff the sum of Three Thousand Dollars ($3,000.00) in accordance with the terms of said stipulation.

2. That plaintiff shall have judgment against the defendant for said sum of Three Thousand Dollars ($3,000.00).

3. That plaintiff shall have sole care, custody and control of said child.

4. That any interest defendant may have in, or claims upon [*sic*] the child, Brandy [*sic*], are hereby terminated.

Dated this **7th** day of **August** 1974."

The order did not determine the paternity of the minor child, Brandi Chiapelli, and she was not a party to the 1974 proceedings. A release of judgment was filed with the court on September 20, 1974, indicating that Vito Viviano had paid $3,000 to Vicki Chiapelli.

On December 19, 1984, the Illinois Department of Public Aid (Department) filed a complaint on behalf of Brandi Chiapelli in an effort to establish the paternity of Vito Viviano. On March 15, 1985, the court entered an order dismissing the original complaint on the basis of defendant's motion asserting that the complaint was not verified. On March 28, 1985, the Department filed an amended verified complaint once again alleging the paternity of defendant. Viviano filed a motion to dismiss the complaint on the grounds that the court lacked jurisdiction to hear the matter because of the 1974 court order. The trial court denied Viviano's motion and after an evidentiary hearing found that he was the natural and biological father of Brandi Chiapelli. In February of 1988, the Department withdrew from the proceeding because it was no longer providing assistance to the minor child. On March 7, 1988, the court appointed a guardian *ad litem* for

the minor, who filed a petition for support against Viviano. On March 29, 1989, the court ordered Viviano to pay future child support of $450 per month. A supplemental order was entered in December of 1990, whereby the court confirmed its previous order and further ordered Viviano to pay child support retroactive to February 1985 in the amount of $24,600. The court also ordered Viviano to pay the guardian *ad litem* fees.

Viviano first argues that the lower court was without jurisdiction to hear the 1984 paternity and support action because the court terminated his parental rights in and to the minor child in 1974. Once an order terminating parental rights is entered, the natural parent is relieved of all parental responsibility for that child. (Ill. Rev. Stat. 1989, ch. 40, par. 1521.) Defendant points to the court's order of August 7, 1974, as proof that his parental rights and duties to Brandi were terminated:

> "[D]efendant has waived any claims he might have as natural father of said child and agreed and consented to the adoption of the child by any person or persons or by any agency and waives service of process on him in any adoption proceedings and agreed that immediate default may be taken against him in any such proceedings.
>
> * * *
>
> *** That any interest defendant may have in, or claims upon [*sic*] the child, Brandy [*sic*], are hereby terminated."

The Adoption Act provides four different forms of consent and surrender which enable parents to legally consent to the termination of their parental rights and to the adoption of their children. (Ill. Rev. Stat. 1989, ch. 40, par. 1512.) Substantially similar forms were available in 1974. (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—8.) While a liberal rule of construction applies under the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1524), substantial compliance with these suggested forms is required. (*In re Custody of Mitchell* (1983), 115 Ill. App. 3d 169, 450 N.E.2d 368; *In re Adoption of Lucas* (1980), 87 Ill. App. 3d 1100, 409 N.E.2d 521.) The 1974 court order, while purporting to memorialize the termination of Viviano's parental rights, meets none of the formalities of the consent and surrender forms. The 1974 order does not refer to any such documents. In addition, the record contains no further proof that defendant consented to the termination of his parental rights, nor does defendant suggest that any proof exists other than the 1974 court order. We conclude that the 1974 court order did not terminate defendant's parental rights.

▮▮ Viviano next argues that the Department and Brandi Chiapelli did not have standing to file their complaint because the Paternity Act of 1957 (Ill. Rev. Stat. 1957, ch. 17, par. 31 *et seq.*) as it existed in 1972, the year of Brandi's birth, provided neither the Department nor the minor with a right of action against the defendant. Defendant contends that the rights and liabilities of the father of an illegitimate child are to be determined by the statute in effect at the time of the child's birth. We disagree.

Under the Paternity Act of 1957, as it existed at the time of Brandi's birth, a proceeding to establish the paternity of a child could be instituted only by the mother of the child. (Ill. Rev. Stat. 1971, ch. 106¾, par. 54.) It was not until section 4 of the Paternity Act was amended in August 1975 that the Illinois Department of Public Aid was permitted to file suit on behalf of illegitimate minor children. (Ill. Rev. Stat. 1975, ch. 106½, par. 54, amended by Pub. Act 79—474, eff. Aug. 22, 1975.) Minor children were first given authority to institute paternity actions with the passage of the Illinois Parentage Act of 1984 (Parentage Act). Ill. Rev. Stat. 1985, ch. 40, par. 2507.

Viviano contends that section 25 of the Parentage Act (Ill. Rev. Stat. 1985, ch. 40, par. 2525) supports his position that Brandi Chiapelli's action is barred. Viviano cites that portion of section 25 which provides:

"[T]he repeal of the 'Paternity Act' *** shall not affect rights or liabilities which have accrued thereunder and which have been determined, settled or adjudicated prior to the effective date of this Act or which are the subject of proceedings pending thereunder on such effective date." (Ill. Rev. Stat. 1985, ch. 40, par. 2525.)

"This provision extends finality to cases brought under the Paternity Act but its application is limited to rights and liabilities which have been 'determined, settled or adjudicated.' " (*Maller v. Cohen* (1988), 176 Ill. App. 3d 987, 991, 531 N.E.2d 1029, 1032.) Here, Brandi Chiapelli did not file an action under the Paternity Act, nor was she permitted to. Technically, Brandi Chiapelli had no cause of action before, and, therefore, the dismissal of the mother's suit has no effect whatsoever on the right of the child to bring an action under the Parentage Act. (*People ex rel. Rice v. Graves* (1989), 191 Ill. App. 3d 220, 547 N.E.2d 717; *Department of Public Aid ex rel. Skelton v. Liesman* (1991), 218 Ill. App. 3d 437, 578 N.E.2d 310.) The minor's cause of action to establish paternity was not "determined, settled or adjudicated." It is clear from reading the second sentence of section 25 that her claim is not barred. That sentence provides that the Parentage

Act "shall not be construed to bar an action which *** could not have been maintained under the 'Paternity Act,' " as long as the limitation periods of the Parentage Act are complied with. Ill. Rev. Stat. 1985, ch. 40, par. 2525.

In the recent supreme court decision *Department of Public Aid ex rel. Cox v. Miller* (1992), 146 Ill. 2d 399, the Department brought a paternity action on behalf of Monica Cox, a minor. The putative father filed a motion to dismiss based on a 1978 settlement agreement between him and the child's mother, wherein he agreed to pay the mother $5,000 and she agreed to a dismissal with prejudice of the paternity action she had filed. The court held that a settlement order and dismissal entered in a paternity action does not bar a subsequent action brought by or on behalf of the illegitimate minor for support. The *Cox* court noted that the Paternity Act was repealed in response to the United States Supreme Court's denunciation of State statutes which denied equal protection to nonmarital children seeking support from their parents. (*Cox*, 146 Ill. 2d at 404, citing *Klawitter v. Crawford* (1989), 185 Ill. App. 3d 778, 781-82, 541 N.E.2d 1159, 1161.) The supreme court, reversing the appellate court, stated that under the circumstances the purpose of "securing finality" through out-of-court settlements is outweighed by the interest of nonmarital children pursuing monetary support from their parents. (*Cox*, 146 Ill. 2d at 412.) In view of the decision in *Cox*, we find the argument of Viviano to be without merit and hold that the trial court did not err in denying Viviano's motion to dismiss the plaintiff's amended complaint.

The final issue for our review is whether the trial court erred in awarding retroactive and future child support. The lower court ordered Viviano to pay future child support of $450 per month and support retroactive to February 1985 in the amount of $24,600. Viviano cites *Department of Public Aid ex rel. Spurgetis v. Newburg* (1989), 181 Ill. App. 3d 424, 537 N.E.2d 384, in support of his argument that child support cannot be sought where there is a prior court-approved settlement. In that case the Department filed a paternity action against the putative father for support. The appellate court affirmed the trial court's dismissal of the action, holding that when the trial court approved a settlement of the mother's paternity suit, the court lost jurisdiction and authority to enter any supplemental orders for support.

While the precise issue at bar was not addressed in *Cox*, we find the reasoning of the supreme court in that case most applicable to the issue herein:

"Legislative common sense dictates that if parents do not support their children, an already strained State welfare system must do so.

In weighing the opposing State interests, the appellate court concluded that the Parentage Act's purpose of 'securing finality' outweighs the interest of nonmarital children in pursuing monetary support from their parents. *** We find these conclusions are contrary to the stated purpose of the Parentage Act and the public policy of this State. Thus, we interpret section 12.1 of the Parentage Act [(Ill. Rev. Stat. 1989, ch. 40, par. 2512.1)], which allows a child to bring an action to ascertain paternity, to also allow that child to bring an action seeking support from his or her parent. To find otherwise would be to denigrate the clearly expressed intent of the legislature as well as the public policy of the State." (*Cox*, 146 Ill. 2d at 412.)

In light of *Cox*, we conclude that the lower court did not err in awarding future and retroactive child support.

Accordingly, the order of the circuit court of Madison County is affirmed.

Affirmed.

GOLDENHERSH, P.J., and LEWIS, J., concur.