*In re* CUSTODY OF WALTER MITCHELL a/k/a David Draper, a Minor.— (The People of the State of Illinois, Petitioner-Appellee, *v.* Larry Mitchell, Respondent-Appellant.)

Fifth District   No. 82—288

Opinion filed April 29, 1983.

Curtis G. Quindry, of Newton, for appellant.

Robin Todd, State's Attorney, of Louisville (Stephen E. Norris and Karen L. Stallman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

The respondent, Larry Mitchell, appeals from a final order of the circuit court of Clay County which terminated his parental rights concerning his natural son, Walter Mitchell. He contends that the circuit court erred in finding that he had executed a final and irrevocable consent to adoption that would justify termination of his parental rights in that the document which he executed did not comply with the appropriate statutory provision for surrender of a child to an agency, and that therefore the document could not effect such a surrender. For the reasons which follow we reverse the judgment of the circuit court and remand.

The record established that on May 13, 1979, Walter Mitchell's parents placed him in the custody of the Department of Children and Family Services (hereinafter referred to as the Department). On May 25, 1979, the respondent executed the following document:

"FINAL AND IRREVOCABLE CONSENT TO ADOPTION

I, LARRY MITCHELL, father of WALTER LEE MITCHELL, a male child, state:

1. That the child was born on January 9, 1979 at Flora, Clay County, Illinois.

2. That I reside at Rt. 1., Lewisville, Clay County, Illinois.

3. That I am 25 years of age.

4. That I hereby enter my appearance in this proceeding, waive service of summons on me, and waive notice of hearings.

5. That I do hereby consent and agree to the adoption of WALTER LEE MITCHELL.

6. That I wish to and understand that by signing this consent

I do irrevocably and permanently give up custody and other parental rights I have to such child.

7. That I understand such child will be placed for adoption and that I cannot under any circumstances, after signing this document, change my mind and revoke or cancel this consent and obtain or recover custody or any other rights over such child. That I have read and understood the above and I am signing it as my free and voluntary act.

DATED this 25 day of May, 1979.

/s/   Larry Dean Mitchell
LARRY MITCHELL."

At the time of execution, Robert and Nijel Draper, relatives of respondent, planned to adopt Walter and the caption on the document named them as petitioners. This adoption never took place, however, and after Walter had spent three months with the Drapers, the Department again took custody of Walter. A petition seeking to have Walter adjudged a ward of the court was subsequently filed in the circuit court of Clay County. On June 1, 1981, Walter was found to be a neglected child and was made a ward of the court. The circuit court made no determination of Larry Mitchell's parental rights at this time, but did grant him visitation rights to Walter who was to remain in the Department's custody.

A second amended petition was filed seeking to terminate respondent's parental rights. The May 25, 1979, document set out above was also filed in the circuit court. Respondent moved to strike the document and a hearing was held on the motion. On April 29, 1982, the court denied the motion, found that the consent was valid, and terminated the respondent's parental rights to Walter. The respondent appeals from this order.

In Illinois, adoption is governed by "An Act in relation to the adoption of persons ***" (Ill. Rev. Stat. 1981, ch. 40, par. 1501 et seq. (hereinafter referred to as the Act)). Two considerations bear on our review of this cause and deserve prefatory attention. Adoption statutes formerly were strictly construed in this State as being in derogation of the commonlaw. (*Keal v. Rhydderck* (1925), 317 Ill. 231, 235, 148 N.E. 53.) This rule of construction, however, is now inapplicable as the statute itself provides that it "shall be liberally construed." (Ill. Rev. Stat. 1981, ch. 40, par. 1524.) Additionally, we are cognizant of this State's strong public policy favoring the finality and stability of adoptions (*In re Adoption of Hoffman* (1975), 61 Ill. 2d 569, 578, 338 N.E.2d 862) and the welfare of adopted children (see *Kathy O. v. Counseling & Family Services* (1982), 107 Ill. App. 3d 920, 925, 438

N.E.2d 695). We will analyze respondent's contentions with these principles in mind.

Section 10 of the Act provides for four different forms of consent and surrender. (Ill. Rev. Stat. 1981, ch. 40, pars. 1512(A) through (D).) Only substantial compliance with these suggested forms is required. (Ill. Rev. Stat. 1981, ch. 40, pars. 1512(A) through (D).) The document which the respondent executed conforms closely to the form prescribed by section 10(A) for consent to the adoption of a born child. (See Ill. Rev. Stat. 1981, ch. 40, par. 1512(A).) This form differs, however, from the form prescribed by section 10(C) for a surrender to an agency by a parent of a born child who is to be subsequently placed for adoption. (Compare Ill. Rev. Stat. 1981, ch. 40, par. 1512(C), with par. 1512(A).) The question before us is whether, by executing the May 25, 1979, document in compliance with the statutory provisions for adoption of a born child, the respondent also consented to the placement of Walter with the Department for subsequent adoption. The test for making this determination is whether the document executed by the respondent substantially complies with the form prescribed by section 10(C). Section 10(A) contemplates existence of a petition presently seeking the adoption of the child. (*In re Kerwood* (1976), 44 Ill. App. 3d 1040, 1044, 359 N.E.2d 183.) As is indicated by the caption on the May 25, 1979, document, this is the type of proceeding which the instant instrument was intended to facilitate. However, where "a child is to be placed for adoption with a licensed agency with the right to consent to a future adoption, parental consent is expressed in writing in the form of a surrender. [Citation.] These statutory forms are almost identical except that the consent form waives appearance in an actual ongoing adoption proceeding while the surrender form details *the transfer of all parental rights from the natural parent(s) to the agency,* so that it may consent to an adoption occurring sometime in the future." (Emphasis added.) (*In re Kerwood* (1976), 44 Ill. App. 3d 1040, 1044.) In the instant case, we note that entirely missing from the document signed by respondent is the language in section 10(C) providing for surrender to an agency "for the purpose of enabling it to care for and supervise the care of such child, to place such child for adoption and to consent to the legal adoption of such child." (Ill. Rev. Stat. 1981, ch. 40, par. 1512(C).) We do not consider this difference to be insubstantial. In the instant case, respondent consented to the adoption of his son by specified known parties, the Drapers, to whom he was related. This is considerably different from consenting to placement by an agency with persons unknown. We do not think that the legislature, by providing different

forms for different routes to adoption intended that no distinction be drawn between the different forms and that a consent to adoption be interchangeable with a surrender to an agency. We conclude that the May 25, 1979, document did not surrender Walter to the agency for subsequent placement for adoption.

We note that this result does not do violence to the public policy favoring finality and stability of adoptions as the record does not indicate that Walter has ever been adopted. Additionally, the language of the form which "give[s] up custody and other parental rights" was necessary to effect an adoption by the Drapers. We do not read this so broadly that it becomes an unconditional relinquishment of parental rights. The judgment of the circuit court of Clay County is therefore reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JONES and KARNS, JJ., concur.