664 N.E.2d 347 (1996)
278 Ill. App.3d 1091
215 Ill.Dec. 950
In the Matter of the ADOPTION OF L.R.B., a Minor (Helen R. Cranston and James R. Cranston, Petitioners-Appellants,
v.
L.R.B., a Minor, Donna Beckley, Randy Lassiter, and the Illinois Department of Children and Family Services, Respondents-Appellees).
No. 4-95-0508.
Appellate Court of Illinois, Fourth District.
Argued March 6, 1996.
Decided April 12, 1996.
Paul S. Braun (argued), John A. Krupa Jr., Krupa & Braun, Chartered, Flossmoor, for Helen R. Cranston.
*348 James E. Ryan, Attorney General State of Illinois, Chicago, Barbara A. Preiner, Solicitor General, Chicago, William K. Blanchard, Asst. Atty. General, State of Illinois, Chicago, for Illinois Department Of Children & Family Services.
Thelma Thomas Davidson, Attorney at Law, Urbana, Guardian Ad Litem for L.R.B.
Presiding Justice COOK delivered the opinion of the court:
The issue in this case is whether a father can control the selection of the adoptive parents of his child by executing a specific consent in their favor, when that child is a ward of the court. We answer that question in the negative and affirm the decision of the trial court.
L.R.B. was born July 16, 1993. She resided with her mother until August 1994, when she was found to be neglected and was placed with a foster family. Her half-brother, born March 12, 1990, had been placed with the same family a year earlier. The Department of Children and Family Services (DCFS) was appointed L.R.B.'s custodian and guardian in October 1994 (No. 94-J-248). The mother's parental rights were terminated February 2, 1995. L.R.B.'s father, Randy Lassiter, has been incarcerated since August 1993 on a 15-year sentence for aggravated criminal sexual assault. James Cranston is Lassiter's uncle. Cranston and his wife were allowed to intervene in the juvenile case, where they sought temporary custody of L.R.B. The trial court, in an order entered October 25, 1994, determined it was best to continue custody with the foster family, where there had been some bonding and where the half-brother lived. Lassiter appealed. This court affirmed. In re L.R.B., No. 4-94-0974 (May 16, 1995) (unpublished order under Supreme Court Rule 23).
The Cranstons then filed a petition to adopt (No. 94-A-79) on December 5, 1994, alleging that Lassiter was willing to consent to the adoption of L.R.B. by the Cranstons. The Cranstons filed a motion in limine seeking to prevent the foster parents from cross-examination or presentation of arguments and evidence. On May 23, 1995, Lassiter executed "a final and irrevocable consent to adoption by the Cranstons," indicating that he was not willing to execute an absolute surrender. DCFS moved to dismiss the petition, arguing that just as Lassiter was not allowed to make decisions regarding L.R.B.'s custody (because L.R.B. was a ward of the court), Lassiter should not be allowed to control L.R.B.'s adoption. The trial court concluded that L.R.B. was not a person available for adoption and granted the motion of DCFS to dismiss the petition for adoption. The Cranstons appeal.
Our review in this case involves a question of law, the proper interpretation of a statute. We determine questions of law de novo, without affording any deference to the trial court's decision. Von Meeteren v. Sell-Sold, Ltd., 274 Ill.App.3d 993, 996, 211 Ill. Dec. 115, 117, 654 N.E.2d 577, 579 (1995). Of course, we consider the views of the trial court to the extent we find them logically persuasive.
The Adoption Act (Act) (750 ILCS 50/0.01 et seq. (West 1994)) provides that parents may exercise some control over the adoption of their child, through private placement. A person is available for adoption when the person is "a child who is in the custody of persons who intend to adopt him through placement made by his parents." 750 ILCS 50/1(F)(c) (West 1994). Parents may privately place their child even with nonrelated parties. Private placement requires more than the consent of the parents, it requires a physical transfer of custody from the parents to the adoptive parties. Private placement is therefore not available where the parents are unable to transfer custody, as in this case where the child is a ward of the court. Even with a private placement the court may decide that the adoption is not in the best interests of the child and return the child to the parent(s). Nees v. Doan, 185 Ill.App.3d 122, 126, 133 Ill.Dec. 180, 182, 540 N.E.2d 1046, 1048 (1989) ("[a]n adoption decree is not in the nature of a consent decree").
A parent whose parental rights are about to be terminated may not execute consents in favor of his relatives in an attempt to control the placement of his children and to *349 prevent the court from choosing the placement which the court believes is in the best interests of the children. See In re Marriage of T.H., 255 Ill.App.3d 247, 250, 193 Ill.Dec. 370, 373, 626 N.E.2d 403, 406 (1993). In T.H., the court was requested to stay proceedings to terminate parental rights pending disposition of a petition to adopt filed by the parent's brother (to whom the parent had given a specific consent).
Petitioners point to section 1-3(13) of the Juvenile Court Act of 1987 (Juvenile Act), which lists among the residual parental rights remaining after the transfer of legal custody or guardianship, "the right to consent to adoption." 705 ILCS 405/1-3(13) (West 1994). As the trial court explained here, however, section 1-3(13) is not an affirmative grant of a right to consent. Section 1-3(13) simply makes it clear that whatever right there is to consent belongs, not to the legal guardian or custodian, but to the parent until such time as parental rights are terminated.
In T.H., a petition to terminate the father's parental rights was filed prior to the adoption petition. That is not the case here, but we think the same rule should apply whenever the child is a ward of the court. The Act suggests that a parent who has no power to privately place a child should have no power to control the placement of the child by the execution of a consent. "A child whose parent has executed a final irrevocable consent to adoption * * * is not a related child to that person." 750 ILCS 50/1(B) (West 1994); see also 750 ILCS 50/1(E) (West 1994). A guardian with power to consent to adoption shall consider all relevant factors in determining the welfare and best interest of the child, including "the wishes of the child's parent as expressed in writing prior to that parent's execution of a consent or surrender for adoption." (Emphasis added.) 750 ILCS 50/15.1(b)(4) (West 1994). A child is available for adoption when "a person authorized by law, other than his parents, has consented." (Emphasis added.) 750 ILCS 50/1(F)(b) (West 1994).
The Act does not provide for consents favoring specific individuals, but a number of cases have held that where a proceeding contemplates adoption by specific parties the consent may be revoked if that adoption falls through, and that a consent to adoption must be distinguished from a surrender to an agency (750 ILCS 50/10(C) (West 1994)), where there is no limitation as to who may adopt. See In re Joseph B., 258 Ill.App.3d 954, 963-68, 197 Ill.Dec. 56, 63-66, 630 N.E.2d 1180, 1187-90 (1994); Nees, 185 Ill. App.3d at 128-29, 133 Ill.Dec. at 183-84, 540 N.E.2d at 1049-50 (1989); In re Custody of Mitchell, 115 Ill.App.3d 169, 172-73, 70 Ill. Dec. 895, 897, 450 N.E.2d 368, 370 (1983). Those cases are essentially private placement cases, however, and do not stand for the proposition that a parent may use a specific consent to control the placement of a child who is a ward of the court. The statutory consent form did provide for naming the adoptive parents at one time, but even then it was held that "[t]he selection of the adopting parents is beyond the control of the consenting parent." Cohen v. Baby Girl Janic, 57 Ill.App.2d 309, 313, 207 N.E.2d 89, 91 (1965).
The child was apparently a ward of the court in Johnson v. Burnett, 182 Ill.App.3d 574, 131 Ill.Dec. 517, 538 N.E.2d 892 (1989), but that case did not address the propriety of the petition for adoption filed by the related parties with the consent of the parents. The decision held only that the petition for adoption filed by the nonrelated foster parents was improper, as the child was not "available for adoption," and the foster parents could not take advantage of the specific consent in favor of the related parties or attempt to prove unfitness. Johnson, 182 Ill.App.3d at 578-79, 131 Ill.Dec. at 520-21, 538 N.E.2d at 895-96. Apparently the foster parents in Johnson had not had custody of the child for 12 months (see 750 ILCS 50/15.1(a) (West 1994)). Johnson, 182 Ill.App.3d at 582, 131 Ill.Dec. at 523, 538 N.E.2d at 898.
A petition to appoint guardian with power to consent to the adoption a child related to petitioners may be filed even if the parents refuse to consent, if it is alleged that the parents are unfit. 705 ILCS 405/2-29(2) (West 1994) ("If the petition prays * * * that a guardian of the person be appointed and authorized to consent to the adoption of the minor"). There is a dispute whether petitioners *350 seeking to adopt a nonrelated child may file such a petition, that is, whether they may "file petitions to adopt their neighbor's children and attempt to prove in subsequent hearings that the parents were unfit." Johnson, 182 Ill.App.3d at 579, 131 Ill.Dec. at 520, 538 N.E.2d at 895; see also In re Petition of Filippelli, 207 Ill.App.3d 813, 818-20, 152 Ill.Dec. 725, 728-29, 566 N.E.2d 412, 415-16 (1990).
When adoptive parents, related or unrelated, file a petition based on unfitness and not on a consent, there is no guaranteeif the petition is successfulthey will be the ones who are allowed to adopt. It is possible that other adoptive parents will be selected. T.H., 255 Ill.App.3d at 253-54, 193 Ill.Dec. at 375, 626 N.E.2d at 408 (finding of unfitness leaves court free to consider competing petitions to adopt); cf. In re Adoption of Ruiz, 164 Ill.App.3d 1036, 115 Ill.Dec. 911, 518 N.E.2d 436 (1987) (no right to intervene in pending adoption where a consent and surrender had been filed; trial court did not abuse discretion in denying intervention, but same judge shall hear both cases on remand). If a petition based on unfitness is successful, a guardian with power to consent to adoption will be appointed. In re M.M., 156 Ill.2d 53, 60-62, 189 Ill.Dec. 1, 6-7, 619 N.E.2d 702, 707-08 (1993); 705 ILCS 405/2-29 (West 1994). Such guardian shall give preference and first consideration to the application of licensed foster parents who have cared for the child for more than a year. 750 ILCS 50/15.1(b) (West 1994). The guardian shall also consider "the value of preserving family ties between the child and the child's relatives, including siblings." 750 ILCS 50/15.1(b)(7) (West 1994). The ultimate decision, however, belongs to the court. 750 ILCS 50/15.1(c) (West 1994).
Petitioners here do not suggest that they could or would attempt to show Lassiter's unfitness, but they do argue that their right to do so supports their position that a petition to adopt a related child need not allege that the child is "available for adoption." "[I]f a petition to adopt may not be filed until a finding of unfitness has been entered, a petitioner has no device to bring the allegedly unfit parent before the court." Filippelli, 207 Ill.App.3d at 821, 152 Ill.Dec. at 730, 566 N.E.2d at 417. We agree with petitioners that at least related parties do not have to allege in their petition to adopt that a child is "available for adoption." Compare 750 ILCS 50/5(B) (West 1994) (petition to adopt nonrelated child) with 750 ILCS 50/5(C) (West 1994) (petition to adopt related child). If the petition to adopt contemplates that the adoption will be accomplished by a consent, however, and that consent is not forthcoming, petitioners have no right to keep their petition on file indefinitely. If the parents refuse to consent, the petition must be dismissed. The same is true if it develops that the parent has no power to give an effective consent. The trial court did not err in dismissing the petition here. In the alternative, the trial court could have allowed the petition to adopt to remain on file, but proceeded first to hear a petition to terminate parental rights, if one were filed. See T.H., 255 Ill.App.3d at 253-54, 193 Ill.Dec. at 375, 626 N.E.2d at 408.
We intend no criticism of the Cranstons by our ruling. There was evidence in the previous case that the Cranstons appeared "`to have a stable home environment, good work ethic, strong family support system, strong sense of family bonding, financial resources, and effective advocacy skills,'" and that they could provide a positive placement. L.R.B., No. 4-94-0974, slip order at 4 (May 16, 1995) (unpublished order under Supreme Court Rule 23). The Cranstons have been allowed to intervene in the juvenile case, and we are confident the trial court will consider any argument the Cranstons make regarding the best interests of L.R.B.
The trial court's order dismissing the petition for adoption filed by the Cranstons is affirmed.
Affirmed.
McCULLOUGH and KNECHT, JJ., concur.