FIFTH DIVISION
March 31, 2010

1-09-2473

| | | |
|---|---|---|
| In re ADOPTION OF SAMUEL E. | ) | |
| | ) | Appeal from the |
| (SHARON S., | ) | Circuit Court of |
| | ) | Cook County, |
| Petitioner-Appellee, | ) | County Division. |
| | ) | |
| v. | ) | |
| | ) | 09 CoAD 555 and 09 D 230086, |
| SAMUEL E., a minor, | ) | Consolidated |
| | ) | |
| Respondent-Appellee, and | ) | |
| | ) | The Honorable |
| ANN H., | ) | Susan Fox Gillis, |
| | ) | Judge Presiding. |
| Intervenor-Appellant). | ) | |
| | ) | |

JUSTICE TOOMIN delivered the opinion of the court:

In this case, we review the circuit court's denial of intervenor-appellant Ann H.'s motion under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)) to dismiss petitioner Sharon S.'s petition to adopt the minor, Samuel E. Dismissal was grounded on the circuit court's determination that Ann's general consent to allow Samuel's adoption by another couple was a surrender of parental rights and that the consent was not timely revoked by Ann under section 11 of the Adoption Act (Act) (750 ILCS 50/11 (West 2006)). The significant

issue we address is whether the Act requires revocation of consent to a failed adoption within 12 months. Given our determination that the limitation period is absolute, we affirm the judgment of the circuit court.

BACKGROUND

Samuel E. was adopted in August 2006 from an Ethiopian orphanage by the intervenor-appellant, Ann. H. Consistent with the international adoption process, the proceeding was assisted by a local agency, Adoption-Link. Samuel, then age 10, lived with Ann for several months, after which Ann sought assistance from the agency because of the child's behavioral issues. Sharon S., who was a supervisor at the agency, took Samuel in temporarily for a few days to provide Ann some respite. However, several days later, Sharon informed Ann that Samuel did not want to return to Ann's home. Accordingly, at Sharon's request, Ann provided Sharon with temporary authority over Samuel. Eventually, Sharon persuaded Ann that it would be best for her to allow Samuel to be adopted by another family. In the meantime, Samuel continued to live with Sharon.

In March 2007, Ann signed a consent for adoption by a Chicago-area family, but this adoption was not completed. The following month, Sharon located Kevin and Stacy G., who lived in Tennessee, and Samuel went to live with them. In turn, the G's filed a petition to adopt Samuel in the circuit court of Cook County. Ann signed a consent to this adoption on June 11, 2007. However, the G's changed their minds about adopting Samuel and returned him to Sharon. On October 24, 2007, the county division entered an order providing that legal custody remained with the potential adoptive parents, the G's, but that it was in the best interests of

Samuel that temporary physical custody be awarded to the adoption agency, with the instruction to place him in an appropriate home, including but not limited to, that of Sharon. The order further required supportive services to expedite an investigation as to a potential adoptive parent to expedite a new placement for Samuel. On July 14, 2008, the G's adoption case was dismissed, and all orders previously entered were vacated.

On July 21, 2008, Ann received a letter from the Department of Children and Family Services (DCFS) indicating that because of the failure of the G's adoption Ann should contact DCFS to discuss her care plan for Samuel. In turn, Ann called Sharon and informed her that she intended to reclaim custody of Samuel. Accordingly, on February 20, 2009, Ann filed a petition for a writ of *habeas corpus* in the domestic relations division of the circuit court, seeking a court order directing that Sharon return Samuel to her.

In April 2009, the Cook County State's Attorney filed a petition for adjudication of wardship in juvenile court, asking that Samuel be declared a ward of the court. The petition alleged that Ann had neglected Samuel by refusing to allow him to return home. The State's Attorney also sought a temporary custody hearing. On April 17, 2009, Ann appeared and filed a motion to dismiss the State's wardship petition. Although a temporary custody hearing was not held on that date, the court entered an agreed order whereby Ann agreed not to remove Samuel pending resolution of the motion to dismiss.

Thereafter, without notice to Ann, Sharon filed a petition to adopt Samuel in the proceedings below. On April 28, 2009, Sharon filed a document denominated "Consent," together with the consent that Ann had signed in June 2007. In turn, the adoption court entered

an interim order which terminated Ann's parental rights. Thereafter, Ann filed a motion to consolidate all the cases, which was granted as to the *habeas* and the adoption proceedings, but denied as to the petition for adjudication of wardship, which the State subsequently voluntarily dismissed.

On June 2, 2009, the court allowed Ann's motion to intervene and leave to file a motion to dismiss the petition to adopt, vacate the interim order, and declare the prior consent invalid or, in the alternative, to revoke the prior consent, pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)). Both Sharon and the office of the Public Guardian, as representative for Samuel, opposed Ann's motion. In turn, the court entered an order denying Ann's motion to dismiss the adoption petition, finding that the consent executed by Ann was not a specific consent, but rather was a general consent. The court also found that Ann had failed to file a motion to revoke consent within 12 month of execution of the consent as required by section 11 of the Adoption Act (750 ILCS 50/11 (West 2006)). Further, the court rejected Ann's alternative argument that Sharon should be estopped from arguing Ann's failure to revoke her consent due to Sharon's constructive fraud, reasoning that it was disingenuous, and denied Ann's petition for a writ of *habeas corpus* for mootness. The court entered a Supreme Court Rule 304 (210 Ill. 2d R. 304) finding that there was no just reason to delay appeal of its order.

## ANALYSIS

As a threshold matter, we address Ann's argument that the circuit court erred in finding that her consent was general, rather than specific. She maintains there is no such distinction in

4

the Adoption Act (750 ILCS 50/1 *et seq*. (West 2008)) between a "specific" and "general" consent. Ann asserts that to the extent the court was referring to a surrender of parental rights, the document she signed was a consent to Kevin and Stacy G. to adopt Samuel, not a surrender of her parental rights. According to Ann, when Kevin and Stacy G. did not adopt Samuel, that consent became a nullity and she was not required to take any measures to revoke it. Alternatively, Ann argues the case should be remanded for a hearing on her motion to revoke consent based on her allegations of constructive fraud. Conversely, Sharon maintains that Ann was required under the Adoption Act to file a motion to revoke her prior consent within 12 months, and since she failed to meet that requirement, her parental rights were properly terminated by the court.

We recognize that section 2-619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). When a court rules on a section 2-619 motion to dismiss, it "must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189, 680 N.E.2d 265, 270 (1997). Our review of a dismissal under section 2-619 of the Code is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368, 799 N.E.2d 273, 278 (2003).

We discern that the policy underlying the Adoption Act directs that parents may be divested of parental rights either through their voluntary consent or involuntarily upon a finding of abuse, abandonment, neglect or unfitness. See 750 ILCS 50/8, 11 (West 2006). The Adoption

5

Act provides the method by which a party may consent to relinquish parental rights to allow another party to adopt a child. *In re A.S.B.*, 381 Ill. App. 3d 220, 223, 887 N.E.2d 445, 448 (2008). Under section 8, consents or surrenders shall be required in all cases, with certain exceptions such as a finding of unfitness. 750 ILCS 50/8(a) (West 2006).

It is well settled that section 10 of the Adoption Act sets forth the form for a consent (750 ILCS 50/10(A) (West 2006)), and the form for a surrender (750 ILCS 50/10(C) (West 2006)). The relevant portion of the consent form delineated in section 10(A) is as follows:

"That I do hereby consent and agree to the adoption of such child.

That I wish to and understand that by signing this consent I do irrevocably and permanently give up all custody and other parental rights I have to such child.

That I understand such child will be placed for adoption and that I cannot under any circumstances, after signing this document, change my mind and revoke or cancel this consent or obtain or recover custody or any other rights over such child. That I have read and understand the above and I am signing it as my free and voluntary act." 750 ILCS 50/10(A) (West 2006).

Section 10(C) provides:

"The form of surrender to any agency given by a parent of a born child who is to be subsequently placed for adoption shall be substantially as follows * * *:

* * *

That I do hereby surrender and entrust the entire custody and control of such child to the ....... (the Agency), a (public) (licensed) child welfare agency with its principal

office in the City of ........, County of ....... and State of ........, for the purpose of enabling it to care for and supervise the care of such child, to place such child for adoption and to consent to the legal adoption of such child.

That I hereby grant to the Agency full power and authority to place such child with any person or persons it may in its sole discretion select to become the adopting parent or parents and to consent to the legal adoption of such child by such person or persons; and to take any and all measures which, in the judgment of the Agency, may be for the best interests of such child, including authorizing medical, surgical and dental care and treatment including inoculation and anaesthesia for such child.

That I wish to and understand that by signing this surrender I do irrevocably and permanently give up all custody and other parental rights I have to such child.

That I understand I cannot under any circumstances, after signing this surrender, change my mind and revoke or cancel this surrender or obtain or recover custody or any other rights over such child.

That I have read and understand the above and I am signing it as my free and voluntary act." 750 ILCS 50/10(C) (West 2006).

In *In re Custody of Mitchell*, 115 Ill. App. 3d 169, 450 N.E.2d 368 (1983), the court held, "[w]e do not think that the legislature, by providing different forms for different routes to adoption, intended that no distinction be drawn between the different forms and that a consent to adoption be interchangeable with a surrender to an agency." *In re Custody of Mitchell*, 115 Ill. App. 3d at 172-73, 450 N.E.2d at 370. Implicit in this recognition is the fact that subsection (C)

contains language indicating the child is surrendered to an agency for adoption at the agency's discretion, whereas subsection (A) indicates the parent is giving consent to a specific adoption. *Nees v. Doan*, 185 Ill. App. 3d 122, 128, 540 N.E.2d 1046, 1050 (1989). Although the Adoption Act does not provide for consents favoring specific individuals, we previously have determined that where a proceeding contemplates adoption by specific parties the consent may be revoked if that adoption fails to materialize, and that under section 10(C), a consent to adoption must be distinguished from a surrender to an agency where there is no limitation as to who may adopt. *In re Adoption of L.R.B.*, 278 Ill. App. 3d 1091, 1094-95, 664 N.E.2d 347, 349 (1996), citing *In re Joseph B.*, 258 Ill. App. 3d 954, 963-68, 630 N.E.2d 1180, 1187-90 (1994), *Nees*, 185 Ill. App. 3d at 128-29, 540 N.E.2d at 1049-50 (1989), and *In re Custody of Mitchell*, 115 Ill. App. 3d at 172-73, 450 N.E.2d at 370. Moreover, the naming of the prospective adoptive parents in the caption of the consent to adoption form is not a necessary prerequisite to a finding that the parent's consent was so limited. *In re Joseph B.*, 258 Ill. App. 3d at 967, 630 N.E.2d at 1189.

Thus, "[t]he rule is clear that a consent to adoption form is not interchangeable with a surrender of parental rights." *In re Joseph B.*, 258 Ill. App. 3d at 964, 630 N.E.2d at 1187, citing *In re Custody of Mitchell*, 115 Ill. App. 3d 169, 450 N.E.2d 368 (1983). "In order for the statutory structure of section 10 to have any meaning, section 10(A) must be read to provide for irrevocable consent to a specific adoption only." *Nees*, 185 Ill. App. 3d at 128, 540 N.E.2d at 1050. "Any other construction of section 10(A) would render it superfluous." *Nees*, 185 Ill. App. 3d at 128, 540 N.E.2d at 1050. Further, the Adoption Act itself provides that it "shall be liberally construed." 750 ILCS 50/20 (West 2006); see also *In re Custody of Mitchell*, 115 Ill.

App. 3d at 171, 450 N.E.2d at 370.

Nonetheless, Ann maintains that the circuit court erred because her consent was in the form provided by section 10(A), rather than the format specified under section 10(C) for surrenders, and that, because the consent is therefore void, there was no requirement that she move to revoke it. We find instructive *In re Custody of Mitchell*, 115 Ill. App. 3d at 172, 450 N.E.2d at 370, where the respondent consented to the adoption of his son by specified known parties, and there was no language from section 10(C) providing for surrender to an agency. There the court determined the consent was "considerably different" from a surrender to an agency with consent to placement by the agency with unknown parties in section 10(C). *In re Custody of Mitchell*, 115 Ill. App. 3d at 172, 450 N.E.2d at 370. Moreover, the language of the section 10(A) consent form regarding giving up custody and other parental rights was necessary to effect a transfer of parental rights in an adoption by those specific parties. Notably, the court held, "[w]e do not read this so broadly that it becomes an unconditional relinquishment of parental rights." *In re Custody of Mitchell*, 115 Ill. App. 3d at 173, 450 N.E.2d at 371. Therefore, the father could contest the use of his consent in a subsequent adoption proceeding by other parties.

In *Johnson v. Burnett*, 182 Ill. App. 3d 574, 538 N.E.2d 892 (1989), the petitioners seeking adoption also argued that a consent to adopt, which was signed by the parents in another adoption case, should be treated as a general surrender for adoption. The consents had the caption of the Johnsons' case and were filed in the that case. The *Johnson* court construed *Mitchell* as holding that a consent is "specific to the case it was prepared for, and did not act as a

general surrender." *Johnson*, 182 Ill. App. 3d at 579, 538 N.E.2d at 896. The court further held, "[i]t is evident section 10(A) does contemplate the existence of a pending petition seeking adoption." *Johnson*, 182 Ill. App. 3d at 580, 538 N.E.2d at 896, citing *Mitchell*, 115 Ill. App. 3d at 172, 450 N.E.2d at 370, and *In re Kerwood*, 44 Ill. App. 3d 1040, 1044, 359 N.E.2d 183, 186 (1976). Thus, the court held the consents were "limited in applicability to the Johnson case *** and may not be considered as general surrenders." *Johnson*, 182 Ill. App. 3d at 580, 538 N.E.2d at 896.

The decision in *Nees* was in harmony with *Mitchell*, as there the consent was for a specific adoption pursuant to section 10(A). *Nees*, 185 Ill. App. 3d at 128, 540 N.E.2d at 1049-50. In *Nees*, both parents signed a consent for the Neeses to adopt their child and the Neeses, in turn, filed their petition to adopt. *Nees*, 185 Ill. App. 3d at 123, 540 N.E.2d at 1047. Several months later, the court denied the Neeses' petition, made the child a ward of the court, and ordered her placement in foster care. *Nees*, 185 Ill. App. 3d at 125, 540 N.E.2d at 1048. The natural mother filed timely a petition to revoke her consent.

The *Nees* court held that, if there was to be any sense to the statutory distinction between consents and surrenders, section 10(A) "must be read to provide for irrevocable consent for a specific adoption only. Any other construction of section 10A would render it superfluous." *Nees*, 185 Ill. App. 3d at 128, 540 N.E.2d at 1050. The reviewing court reasoned that when the circuit court denied the Neeses' petition for adoption, the natural mother's consent to an irrevocable termination of her parental rights became voidable. *Nees*, 185 Ill. App. 3d at 128-29, 540 N.E.2d at 1050. Relying on *Mitchell*, the court further held that although the section 10(A)

consent form includes language giving up all parental rights, that language "cannot be read so broadly that it encompasses a complete termination of parental rights where a proposed adoption by a specified known party is not consummated." *Nees*, 185 Ill. App. 3d at 128, 540 N.E.2d at 1050. Thus, within the rubric of the court's determination, when the petition to adopt was denied, the child should have been returned to her mother, absent a finding of unfitness or execution of another consent form. *Nees*, 185 Ill. App. 3d at 128, 540 N.E.2d at 1050.

In the case at bar, however, the circuit court determined that Ann's consent was not a "specific" consent. The court relied heavily on *Joseph B.* and stated the following:

"[T]his distinction between a surrender and a consent is exactly what the courts in Mitchell, Johnson, N[ees] * * *, and even Joseph B. meant when they all held that a consent, as distinct from a surrender, is specific to the adoption petitioner and that when the adoption petition fails, the parent's rights are not thereby terminated."

Here, Ann's consent had the caption of the G's case on it, similar to *Mitchell* and *Nees*, and was in the form under section 10(A). Thus, we agree with Ann that her consent to the G's adoption was not a surrender under section 10(C) and that denial of Ann's motion to revoke her consent on this basis was erroneous.

Ann also maintains that the court erred in determining that her motion to revoke was time-barred. Ann contends that, since the G's adoption was never consummated, her agreement to that adoption became void, and thus she was not required to seek to revoke that consent within the limitations period under section 11. Rejecting that contention, the circuit court found that Ann did not timely revoke her consent under section 11 of the Adoption Act, which provides the

following limitations period:

> "No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." 750 ILCS 50/11(a) (West 2006).

Addressing this issue, we note that the question left unresolved by *Nees* was the consequences inuring when a natural parent does not timely seek to revoke a section 10(A) consent:

> "As the mother here seeks the return of her child and did so in a timely fashion, we need not address the difficult problems that may arise where the natural parents do not wish the return of the child or where a considerable amount of time may pass between the consent and the denial of the petition for adoption." *Nees*, 185 Ill. App. 3d at 129, 540 N.E.2d 1046 at 1050.

Notably, *Mitchell* and *Johnson* likewise did not address any issue as to the timeliness of an action to revoke a consent under section 11.

Ann maintains that the purpose of promoting finality found section 11's statute of limitations was intended to apply only to cases where an adoption has been consummated, not where an adoption fell through. She cites to the language of *Street v. Hubert*, 141 Ill. App. 3d 871, 491 N.E.2d 29 (1986), that the purpose of the amendment is to "cut[] off the prolonged ability of the natural parents to set aside an adoption decree." *Street*, 141 Ill. App. 3d at 874, 491 N.E.2d at 31. Ann also asserts that requiring a parent to revoke a consent under section 11 in the context of a failed adoption reveals a conflict in the statutory scheme with section 10, which

distinguishes between consents and surrenders. She contends that the application of section 11 to consents in failed adoptions would result in an absurd "legal limbo" where the natural parent's rights are forfeited but the potential adoptive parents do not have parental rights. According to Ann, the correct result is that if an adoption falls through, the parent retains all her legal rights as if she had never consented.

Ann's proposition is devoid of any authority providing support. Moreover, well reasoned precedent dictates to the contrary. As this court has previously noted, "[t]he one-year statute of limitations contained in section 11 has consistently been interpreted by courts as being absolute." *In re Joseph B.*, 258 Ill. App. 3d at 970, 630 N.E.2d at 1191. The specific 12-month limitation of section 11 of the Adoption Act is controlling in an action challenging the validity of the consent to adoption. *In re Adoption of Baby Girls Mandell*, 213 Ill. App. 3d 670, 673, 572 N.E.2d 359, 361 (1991). Notably, a final adoption is not a prerequisite to the application of the statute of limitations contained in section 11. *In re Joseph B.*, 258 Ill. App. 3d at 972, 630 N.E.2d 1180 at 1993.

We find the facts at bar remarkably similar to *In re Joseph B.* In *In re Joseph B.*, the mother, similar to Ann here, executed a document entitled "Final and Irrevocable Consent to Adoption" on July 12, 1991, and pursuant to court order, her son was placed with his godmother, who initially agreed to adopt him. *In re Joseph B.*, 258 Ill. App. 3d at 956, 630 N.E.2d at 1182. In April 1992, however, the godmother changed her mind and the adoption did not proceed. DCFS took the boy from the godmother's home and placed him in a foster home. On August 13, 1992, approximately 13 months after Angela signed the original consent and without any further

13

notice to the mother, DCFS sought and obtained an order terminating her parental rights and authorizing it to consent to the boy's adoption. *In re Joseph B.*, 258 Ill. App. 3d at 956-57, 630 N.E.2d at 1182. On November 16, 1992, the mother filed a motion to void her consent of July 12, 1991, and vacate the August 13, 1992, order terminating her parental rights. *In re Joseph B.*, 258 Ill. App. 3d at 956-57, 630 N.E.2d at 1182.

As in the case at bar, the mother in *In re Joseph B.* argued that the court was without authority to enter the order terminating her rights because the consent became void when the godmother decided not to adopt her son. *In re Joseph B.*, 258 Ill. App. 3d at 970, 630 N.E.2d at 1191. However, the court held that even assuming *arguendo* that was the case, she could not challenge the consent or the order terminating her rights, because she failed to bring her attack within one year of the signing of the consent. *In re Joseph B.*, 258 Ill. App. 3d at 970, 630 N.E.2d at 1191. The court stated: "The one-year statute of limitations contained in section 11 has consistently been interpreted by courts as being absolute." *In re Joseph B.*, 258 Ill. App. 3d at 970, 630 N.E.2d at 1191. There the court relied on *In re Adoption of Baby Girls Mandell*, for the proposition that an adoption could not be challenged by an allegedly void consent. Noting the "clear and unequivocal language" of section 11, the court determined that section 11 barred actions to revoke consents filed more than one year after the signing of the consent, even where such consent is alleged to have been void *ab initio*. *In re Adoption of Baby Girls Mandell*, 213 Ill. App. 3d at 674, 572 N.E.2d at 361. Thus, the mother was barred from attempting to establish that the consent to adoption was void, and all of her contentions which were based on this premise, including her jurisdictional argument, were rejected. *In re Adoption of Baby Girls*

14

*Mandell*, 213 Ill. App. 3d at 674, 572 N.E.2d at 362.

The court in *In re Joseph B.* also rejected a similar argument that section 11 is limited only to circumstances where an adoption decree has been entered. *In re Joseph B.*, 258 Ill. App. 3d at 972, 630 N.E.2d at 1193. In that matter, the court discussed *In re D.B.*, 246 Ill. App. 3d 484, 615 N.E.2d 1336 (1993), where a mother attempted to challenge the surrender she executed more than one year after she signed it, and, like Ann in the instant case, argued that section 11 did not apply because there was no final order of adoption. The court in *In re D.B.* rejected this argument, stating the following:

> "There is a factual distinction between challenging the validity of the surrender for
> adoption and challenging a final order of adoption. [Citation.] However, [section 11] is
> addressed to the subject of challenges to the validity of the surrender for adoption,
> without any reference to whether an order of adoption has been entered. The statute
> specifically bars a challenge to the validity of the surrender made later than 12 months
> after the date on which the document was signed." *In re D.B.*, 246 Ill. App. 3d at 490,
> 615 N.E.2d at 1340.

Nevertheless, Ann maintains that the law under the Adoption Act was unclear and that even the State's Attorney's office and DCFS treated Ann as though she was still Samuel's legal parent after the G's adoption petition was dismissed. However, we find no ambiguity in the statutory language, nor in subsequent application of the statute by Illinois courts. Therefore, we conclude section 11 clearly bars any action challenging a consent or surrender after 12 months.

In the case *sub judice*, Ann's failure to take timely action clearly resonates. Ann signed

the consent for the G's adoption on June 11, 2007. The G's adoption case was not dismissed until July 14, 2008, and during that time the G's still had legal custody of Samuel. Thus, 12 months had already elapsed by the time the G's adoption petition was dismissed. During the entire time the G's adoption case was pending, Ann did not seek to revoke her consent. Moreover, she did not file her motion to revoke consent until June 2, 2009, nearly two years later. Clearly, she is foreclosed by section 11 from raising a challenge to her consent.

We also reject Ann's contention that the application of section 11 works an absurd result and leaves a child in a "legal limbo" where the parent is barred from revoking a consent even where an adoption fails. Section 20, enacted several months after the *In re Joseph B.* decision, provides the following:

> "In the event a judgment order for adoption is vacated or a petition for adoption is denied, the court shall promptly conduct a hearing as to the temporary and permanent custody of the minor child ***. The parties to said proceedings shall be the petitioners to the adoption proceedings, the minor child, any biological parents whose parental rights have not been terminated, and other parties who have been granted leave to intervene in the proceedings." 750 ILCS 50/20 (West 2006).

Further, section 13 of the Adoption Act dictates that the court enter an interim order and hold a hearing to determine the validity of a consent when an adoption petition is filed, as was the case here. 750 ILCS 50/13 (West 2006). The circuit court here held such a hearing, and determined that Ann's belated attempt to revoke her consent was barred by section 11, and thus properly terminated her parental rights.

These same principles guide our determination that, regardless of whether Ann signed a consent under section 10(A), or a surrender under section 10(C), section 11 bars actions to revoke both a "a consent to or surrender for adoption." 750 ILCS 50/11(a) (West 2006). Thus, notwithstanding the circuit court's determination that Ann had executed a "general" consent, *i.e.*, a surrender, that determination does not affect the result in this case. The only difference the form of consent would have made is if Ann had timely brought an action to revoke, given that her consent to the G's adoption may then have been voidable. See *Nees*, 185 Ill. App. 3d at 128-29, 540 N.E.2d at 1050. However, here any action to revoke is barred as untimely by section 11. 750 ILCS 50/11(a) (West 2006). We therefore determine that the circuit court properly denied Ann's motion to revoke her consent on the grounds that it was a specific consent and untimely.

Analytical hindsight further demonstrates that Ann's motion to challenge the consent based on fraud and duress and her *habeas corpus* petition also are foreclosed, as section 11 bars all actions beyond 12 months of execution of the consent. The provision specifically includes actions to revoke based on fraud and duress. We discern the language of the statute to be unmistakably clear: "No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." 750 ILCS 50/11(a) (West 2006).

Even assuming *arguendo* we were to address the merits of Ann's fraud and duress argument, it is doubtful a different result would obtain. The burden of proving fraud or duress rests upon the party challenging the validity of the consent, and the findings of a trial court as to this issue may not be set aside on appeal unless contrary to the manifest weight of the evidence.

17

1-09-2473

*Hale v. Hale*, 57 Ill. App. 3d 730, 736, 373 N.E.2d 431, 435 (1978). Here, the circuit court's ruling denying Ann's motion to revoke consent based on fraud and duress as "disingenuous" was not against the manifest weight of the evidence. Again, we find *In re Joseph B.* instructive, where we rejected an action to revoke consent based on fraud and duress under similar circumstances, reasoning:

> "In this case, there were apparent alternative methods of ascertaining the truth. Angela could have easily sought the advise of an attorney for a determination as to whether she could redeem her rights. She could have called the public defender and learned that the adoption was not proceeding." *In re Joseph B.*, 258 Ill. App. 3d at 975-76, 630 N.E.2d at 11.

In the case *sub judice*, similar to the holding in *In re Joseph B.*, Ann could have readily consulted with an attorney and discovered that any action to revoke her consent was governed by the 12-month limitation period. Ann argues that Sharon breached her fiduciary duty as a social worker and committed fraud by taking Samuel in, persuading Ann to allow Samuel to be adopted by another family, and persuading her not to take steps to regain custody. Yet, in rejecting that argument, the court aptly stated: "I can't imagine that Ann [H.] reasonably relied on what Sharon told her. There was no reason she couldn't get an attorney." Further, the person who obtained Ann's consent was not Sharon but another person at the agency. To set aside a consent to adoption, the fraud and duress must have been accomplished by the person before whom the consent or surrender is acknowledged. *Kathy O. v. Counseling & Family Services*, 107 Ill. App. 3d 920, 926-27, 438 N.E.2d 695, 701 (1982). Fraud or duress by some third party does not affect

18

the validity of the consent. *Kathy O.*, 107 Ill. App. 3d at 927, 438 N.E.2d at 701. Therefore, we concur in the circuit court's determination that there was no showing of constructive fraud.

We further find that Ann did not make a proper showing to sustain her *habeas corpus* petition. The critical issue in a *habeas* proceeding is whether the petitioner can show a *prima facie* legal right to custody. *Stines v. Vaughn*, 23 Ill. App. 3d 511, 517, 319 N.E.2d 561, 566 (1974); *In re J.D.*, 317 Ill. App. 3d 419, 422, 739 N.E.2d 1036, 1039 (2000). Here, the application of section 11 barring Ann's motion to revoke her consent to adoption established that Ann no longer had a legal right to custody of Samuel. Thus, the court also properly dismissed Ann's *habeas corpus* petition. In any event, we need not rule on the merit of either of these causes of action, as Ann is foreclosed from maintaining any action to challenge her consent by section 11.

CONCLUSION

Based upon the foregoing considerations, we affirm the judgment of the circuit court.

Affirmed.

FITZGERALD SMITH and HOWSE, JJ., concur.

REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | IN RE THE PETITION OF: SHARON S., <br><br>    Petitioner/Appellee, <br><br>TO ADOPT <br>SAMUEL E. <br>County, <br>A Minor, <br>consolidated <br><br><br>    Intervenor/Appellant.. |
| Docket No. <br><br>COURT <br><br><br>Opinion Filed | 1-09-2473 <br>Appellate Court of Illinois <br>First District, FIFTH Division <br><br>March 31, 2010 <br>(Give month, day and year) |
| JUSTICES | PRESIDING JUSTICE TOOMIN delivered the opinion of the court: <br><br>FITZGERALD SMITH and HOWSE, JJ.,            concur [s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin: <br><br>The Honorable   Susan Fox Gillis, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago. <br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel) <br><br>Also add attorneys for third-party appellants or appellees. | ~~Indicate if attorney represents APPELLANTS or APPELLEES and include~~ attorneys of counsel. Indicate the word NONE if not represented. <br><br>Appellant:                     Joan S. Colen <br>                                 Attorney for Appellant <br>                                 77 W Washington Street <br>                                 Chicago, IL 60602 <br>                                 312/701-1075 <br><br>Appellee:                     Robert F. Harris <br>                                 Kass A. Plain <br>                                 Jean M. Agathen <br>                                 Office of the Cook County Public Guardian <br>                                 2245 West Ogden Avenue, 4th Floor <br>                                 Chicago, IL 60612 <br>                                 312/433-4300 |