*In re* ADOPTION OF LEON CURTIS GARRISON, a Minor.—(DOYLE ESTES, JR., *et al.*, Petitioners-Appellees, *v.* JOSEPH R. GARRISON, Respondent-Appellant.)

First District (5th Division)    No. 79-2150

Opinion filed February 20, 1981.

Richard C. Lamere, of Chicago (Melvin S. Dick & Associates, of Lincolnwood, of counsel), for appellant.

Joseph R. Pigato, of Chicago Heights, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, respondent, the natural father of Leon Curtis Garrison, a minor (Leon), appeals from an order finding that he was unfit by reason of abandonment to have the care and custody of Leon and granting the amended petition of petitioners for the adoption of Leon. He contends that (1) there was a failure to prove his unfitness by clear and convincing evidence; and (2) the trial court erred in applying the Dead Man's Act to exclude evidence of respondent's fitness.

The record discloses that respondent and petitioner Kathleen Estes were the natural parents of Leon, whose custody was awarded to Mrs. Estes in their 1974 divorce proceeding. Leon lived with his mother after the decree and continued living with her following her marriage to petitioner Doyle Estes, Jr. (hereafter petitioner)[1]; that while he and Kathleen Estes were working, Leon was left with his paternal grandmother, Rose Garrison; and that respondent did not visit Leon, provide any support, or send any gifts or cards to him except for a card and photograph of respondent's daughter by his second marriage. He also stated that he and Kathleen Estes had a joint checking account which was managed by her, and he never reconciled the account or wrote checks on it. Petitioner admitted that respondent could have visited Leon while he (petitioner) was at work, and he acknowledged that Leon had several of the presents described by respondent as gifts left with Rose Garrison for Leon.

Respondent testified that he visited the child sometimes on a weekly basis and was involved with him in a variety of activities such as trips to the park or out to eat; that he took the child on an all-day outing to Rock Falls, Illinois, in July 1974; that he paid $25 weekly in cash for child support pursuant to the divorce decree until the end of September 1974 and, thereafter, by check until January 1975, when he became unemployed; that after he was reemployed, in August 1975, his efforts to resume payments were rejected, and he then put the payments in a checking account and later in a credit union; that he attempted, without success, to arrange visitation with Leon but was able, however, to visit him every two weeks at Rose Garrison's home until August 1975; that in the summer of 1977, plans had been made for Leon to visit him in St. Louis, but they were cancelled by his mother at the last moment; that he telephoned Leon on the average of every four to six weeks at Mrs. Garrison's home, and when Leon was ill for two weeks in 1976 he called every day; that he sent

---

[1] Petitioner Kathleen Estes, mother of Leon, was deceased at the time of trial, and the adoption judgment was in favor of her husband, petitioner Doyle Estes, Jr., at the time of her death.

cards and letters to Leon through Mrs. Garrison every holiday, and he continues to send gifts at various times.

Rose Garrison testified that she babysat for Leon on a regular basis while Kathleen Estes worked; that respondent visited the boy regularly at her home both before and after he moved to St. Louis; that she knew plans had been made for Leon to visit respondent in St. Louis; that respondent made many telephone calls to Leon—particularly during a 2-week illness when calls were made daily; and that respondent sent gifts to the child through her.

Respondent also offered in evidence certain conversations purportedly relevant to the denial of his visitation rights and the refusal of child-support payments by Kathleen Estes. The statements were offered in defense of the allegation of abandonment but were ruled inadmissible under the Dead Man's Act. (Ill. Rev. Stat. 1979, ch. 51, par. 2.) The trial court found respondent unfit by reason of abandonment to assume care and custody of the child and entered a judgment of adoption in favor of petitioner.

OPINION

Respondent first contends that he was not proved to be unfit as that term is defined in the Illinois Adoption Act (the Act). That act provides in relevant part:

> "Except as hereinafter provided in this Section, consents shall be required in all cases, unless the person whose consent would otherwise be required shall be found by the court to be an unfit person as defined in Section 1 of this Act,[1] or the parent of an adult sought to be adopted * * *." (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—8.)

The Act defines "unfit person" as follows:

> "When used in this Act, unless the context otherwise requires:
> * * *
> D. 'Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following:
> (a) Abandonment of the child; * * *." (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1.)

Together, these provisions require that a natural parent who refuses to consent to the adoption of his child must be shown to be unfit, and one of the grounds by which lack of fitness may be demonstrated is abandonment.

■■ ■ For a showing of abandonment, the courts require that there be conduct on the part of the parent which demonstrates a settled purpose to forego all parental duties and to relinquish all parental claims to the child (*In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228; *Ward v.*

*Kamberos* (1976), 36 Ill. App. 3d 703, 344 N.E.2d 691; *In re Moriarity* (1973), 14 Ill. App. 3d 553, 302 N.E.2d 491; *In re Cech* (1972), 8 Ill. App. 3d 642, 291 N.E.2d 21; *Thorpe v. Thorpe* (1964), 48 Ill. App. 2d 455, 198 N.E.2d 743) and that such conduct be intentional (*In re Moriarity*; *Mateyka v. Smith* (1964), 47 Ill. App. 2d 1, 197 N.E.2d 157; *Thorpe v. Thorpe*; *In re Adoption of Walpole* (1955), 5 Ill. App. 2d 362, 125 N.E.2d 645). In recognition of the nature of adoption as a procedure which severs the rights and interests of the natural parent and permanently terminates the relationship between parent and child, the courts—cognizant of the importance of the parent-child relationship—require clear and convincing evidence before severing that relationship. (*In re Jones* (1975), 34 Ill. App. 3d 603, 340 N.E.2d 269; *In re Moriarity*; *Thorpe v. Thorpe*; *In re Adoption of Walpole*.) In the context of adoption, clear and convincing evidence has been held to be proof which leaves the trier of fact with no reasonable doubt concerning the truth of the matter in issue. (*In re Jones*.) Additionally, the finding of the trial court will not be disturbed on review unless contrary to the manifest weight of the evidence. *In re Jones*; *Thorpe v. Thorpe*.

The evidence presented here does not, in our view, support the finding of unfitness by reason of abandonment. First, concerning respondent's contact with his son, we note that although petitioner testified that he never saw respondent visiting with Leon, he conceded that it could have occurred during petitioner's working hours away from home. In addition, respondent stated that he visited his son often, sometimes on a weekly basis, and once took him on an all-day outing to Rock Falls, Illinois—a trip which was corroborated by photographs taken on that day; that after visitation was denied, he continued to visit Leon approximately every two weeks at the home of Rose Garrison until he moved to St. Louis in August 1975; that thereafter, respondent visited Leon at Rose Garrison's home in October and December of 1975, July 1976, and April 1977, despite the denial of formal visitation arrangements; that plans made to have Leon visit him in St. Louis were cancelled by Kathleen Estes; and that visits by him with Leon and his attempts to arrange other visitations were corroborated by Rose Garrison.

Secondly, with respect to the evidence of child support, we note that petitioner testified he did not see respondent bring any money for child support. He admitted, however, that before their marriage he and the child's mother had separate bank accounts; that after their marriage they had a joint checking account handled by her; and that he never reconciled or wrote checks on the account. Respondent testified to payments both prior to and following the divorce, with payments initially in cash and later by check when he was able to establish a checking account. While there was a lapse in support payments due to his unemployment, he stated

that when he was reemployed, his offer to make the payments was rejected, and he then placed the support money in a checking account and later in a credit union account.

Thirdly, there was testimony by respondent that he made frequent telephone calls to his son and regularly sent cards and gifts. While petitioner said that respondent never called Leon, Rose Garrison confirmed that respondent had called his son on the average of every four to six weeks and daily during a 2-week illness, and that he sent gifts and cards through Rose Garrison on various occasions during the entire period from the divorce to the time of trial. Although petitioner testified that respondent gave the child no gifts and sent only one card, he admitted that some of the things Leon possessed were described by respondent as gifts he had given.

■■ In summary, considering respondent's testimony concerning child support, visitation, and other contacts with his son such as telephone calls, cards and gifts—much of which was corroborated and very little contradicted by petitioner—we conclude that the trial court's finding of abandonment was contrary to the manifest weight of the evidence.

While this conclusion requires reversal of the trial court's order, we are also of the opinion that the trial court erred in applying the Dead Man's Act to exclude testimony by respondent as to conversations with Kathleen Estes concerning the denial of visitation and the refusal of child support. In this regard, we note that all parties in the present case were suing or defending in their individual capacities, so that the statutory requirements for exclusion of testimony by means of the Act were not satisfied. The statute in question provides in relevant part:

"In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party or person directly interested in the action shall be allowed to testify on his own behalf to any conversation with the deceased or incompetent person or to any event which took place in the presence of the deceased or incompetent person, * * *." Ill. Rev. Stat. 1979, ch. 51, par. 2.

■■■ The Dead Man's Act is designed primarily to protect decedent's estates from fraudulent claims (*Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 406 N.E.2d 879; *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022), and to that end the Act prohibits a party to a civil action or a person directly interested from testifying in his own behalf when the adverse party sues or defends as the representative of a deceased or incompetent (see *Simon v. Plotkin*). As the petitioners in the present case are suing in their individual capacities, with no parties described as or alleged to be representatives of deceased, the trial court's application of the statute was improper.

For the reasons stated, the order appealed from which found respondent unfit and granted the petition to adopt is reversed.

Reversed.

LORENZ and WILSON, JJ., concur.