JANET L. NEES *et al.*, Petitioners-Appellants and Cross-Appellees, v. MARIANNE LYNN DOAN, Respondent-Appellee and Cross-Appellant (Infant Girl Doan, Respondent-Appellee and Cross-Appellee; Ronald Potter, Respondent).

Fourth District   No. 4—88—0848

Opinion filed June 21, 1989.

Arthur M. Lerner, of Lerner & Kirchner, of Champaign, for appellants.

Craig H. DeArmond, State's Attorney, of Danville (Larry S. Mills, Assistant State's Attorney, of counsel), for appellee Gerald Chrisman.

David J. Ryan, of Dukes, Martin, Helm & Ryan, Ltd., of Danville, for appellee Marianne Lynne Doan.

Thomas M. Goodwin, of Dougherty, Hofmann & Goodwin, of Danville, guardian *ad litem*.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by the petitioners from the denial by the circuit court of Vermilion County of their adoption petition. The petitioners James and Patricia Nees filed their petition on July 30, 1987. On that same day, the natural mother Marianne Doan executed a final and irrevocable consent to the adoption of her infant daughter. On the following day, the natural father also consented to the adoption. The trial court ordered termination of parental rights on January 31, 1987. Temporary custody of the child was given to the petitioners, an attorney was appointed guardian *ad litem* for the infant, and the county department of probation services was ordered to investigate the petitioners and report to the court.

A hearing was held on the Neeses' petition to adopt on December 8, 1987. The parties agreed to waive a six-month waiting period. At the time of the hearing, the child had been living with the petitioners since July 29, 1987. She was covered by medical insurance and had a

room of her own in the petitioners' two-bedroom home. The home had a value of approximately $70,000 and there was no outstanding mortgage. The petitioners indicated they were able to meet their current financial obligations. The monthly income of the family is approximately $1,000 and the expenses are about $900. Of this $678 per month came from pension and disability payments to Patricia Nees. The parties had filed for bankruptcy in 1985. Evidence was presented to suggest the petitioners' current comfortable financial situation was due primarily to an inheritance of $135,000 received by the petitioners from the estate when James Nees' father died after their bankruptcy.

James Nees testified he graduated from high school in 1960 and had taken some courses at a junior college. The evidence showed James Nees had a history of criminal activity and continual difficulty holding a job for long periods of time. In 1979, he was charged with burglary in Vermilion County. The charges were later reduced to disorderly conduct, and the petitioner was given two years' probation. In 1976, the petitioner was charged with retail theft in Vermilion County. However, these charges were later dismissed. In 1975, defendant was charged and convicted of burglary in Champaign County. He was again placed on probation and completed it successfully.

James Nees' employment history showed he has generally been employed as a janitor or maintenance worker since his graduation from high school. Nees was fired twice from employment with the University of Illinois. The first time in 1975 was for theft and led to his burglary conviction in Champaign County. He was rehired by the University and was shortly thereafter fired for sexual harassment of a female co-worker in 1977. Prior to that, Nees had worked at St. Elizabeth's Hospital and had been fired for taking workers' compensation from the hospital while working a similar job at a second employer. More recently, the petitioner had been fired in 1987 from a maintenance job with the Sheraton Inn in Danville for forging a letter of recommendation from his employer. At the time of the adoption hearing, he held two part-time jobs earning around $4 an hour. The petitioner was 45 years old.

Patricia Nees testified she was 37 years old. The evidence showed she was diabetic, had a heart condition, arthritis, and was obese. The Social Security Administration determined she was disabled and her income was largely derived from social security disability payments. She also worked at St. Elizabeth's Hospital for 17 years and received pension payments as a result of this employment. Despite her health problems, the petitioner claimed she was able to take care of the

child. She also testified that she had a history of caring for other people's children and worked at a church nursery.

Carol Fisher of the Vermilion County Probation Department testified she had carried out an investigation at the order of the court in this matter. She stated the Neeses had withheld employment information from her and withheld financial information by understating their assets. She also stated she visited the petitioners' home and it was clean, of fair size, and well furnished. There was no indication of any danger to the child and the child appeared to be clean and well cared for.

Mary Ann Heinrich testified she worked for the Illinois Department of Children and Family Services (DCFS). She investigated the Neeses for certification as foster care parents. She also testified the Neeses had misled her concerning their background. Specifically, Mr. Nees had not indicated any conviction for serious crime or having received mental health counselling. She recommended the Neeses not be licensed as foster care parents. Her recommendation was not based so much on the past criminal activities of James Nees, but primarily on the Neeses' failure to be forthcoming and honest in dealing with DCFS.

Dr. Stanley Hogsett testified on behalf of the petitioners. Dr. Hogsett is a clinical psychologist and examined James Nees on two occasions. On these occasions, he administered several psychological and intelligence tests. He testified James Nees was of normal intelligence and did not suffer from any psychopathology. Nothing revealed in the tests indicated the petitioner would not be an appropriate parent.

On December 28, 1987, the court denied the Neeses' petition for adoption. The child was made a ward of the court, and the court services department was directed to place the child in foster care. On January 18, 1988, the petitioners filed a motion for reconsideration. On January 20, 1988, the natural mother Marianne Doan filed a petition to void or revoke her consent to the adoption. On January 26, 1988, the court ordered any proceedings concerning the adoption of the child stayed. On October 17, 1988, the petitioners' post-trial motions were denied, and on October 28, 1988, the motion by the natural mother to revoke her consent to adoption was denied by an order of the court. Both the petitioners and the mother Marianne Doan filed timely notices of appeal.

■ The petitioners argue the trial court erred because it had no substantial basis on which to deny the adoption. Section 2 of the Adoption Act (Act) sets forth the standard for adoptive parents:

"(a) A reputable person of legal age and of either sex, provided that if such person is married, his or her spouse shall be a party to the adoption proceeding, including a husband or wife desiring to adopt a child of the other spouse, in all of which cases the adoption shall be by both spouses jointly." (Ill. Rev. Stat. 1985, ch. 40, par. 1502(a).)

Section 15 of the Act also states: "The welfare of the child shall be the prime consideration in all adoption proceedings." Ill. Rev. Stat. 1985, ch. 40, par. 1519.

The petitioners emphasize in their brief the excellent care which they have provided for the child and the voluntary nature of the consent provided by the child's natural parents. Neither of these issues is contested on appeal. The evidence universally shows the child was well cared for and there was no serious doubt the petitioners were capable for caring for the child at this time. All parties agree that the consent provided by the natural parents was adequate for the purposes of adoption by the Neeses.

■■ ■ An adoption decree is not in the nature of a consent decree, rather, its entry is dependent upon the court's findings from the evidence, if any, that the adoption is for the welfare of the child. (*In re Adoption of Lucas* (1980), 87 Ill. App. 3d 1100, 409 N.E.2d 521.) In this case, there were considerable grounds for finding the adoption would not be in the best interest of the child. In addition to James Nees' considerable criminal background, there was also his continuing pattern of dishonesty in dealing with both his employers and the public agencies assigned to investigate his background. There is considerable instability in his employment history, and at the time of the circuit court's decision, the petitioner had been employed for only a short period of time in two part-time minimum-wage positions. The dissipation of a considerable inheritance and the petitioners' filing for bankruptcy provided the circuit court with additional grounds to question the continuing financial stability of the petitioners. Although the testimony tended to indicate Patricia Nees was currently capable of dealing with the requirements of the child, she had retired on disability and had been determined to be disabled by the Social Security Administration. At the time of the court's decision she continued to suffer from serious health problems. For these reasons, the circuit court had ample justification for finding the adoption would not be in the best interest of the child in this case.

Section 2 of the Act also requires the adoptive parents be reputable persons. In this case, James Nees' criminal history, his continuing pattern of deception, and employment instability would justify the

court in finding that he was not a reputable person for the purposes of the Act.

■ Petitioners in their brief rely heavily on *In re Adoption of Smith* (1976), 38 Ill. App. 3d 217, 347 N.E.2d 292. They appear to argue *Smith* holds a court may approve an adoption even when the potential adoptive parents are less than ideal candidates. In *Smith*, the potential adoptive parents were the child's grandparents. While there was some question as to the success of the grandparents in raising their own children, there was no serious question as to their fitness or that they were reputable people for the purposes of the Act. A more important issue in that case was the welfare of the child where the natural parents and the prospective adoptive parents had a troubled relationship. This difficulty was exacerbated by the misconduct of DCFS in dealing with the grandparents. The appellate court found the abuse of authority by DCFS there had to be corrected and the trial court's finding was contrary to the manifest weight of the evidence where it had denied the petition of fit parents on the grounds of the best interest of the child. Here, the parents were not found to be fit. This finding is amply supported by the evidence and *Smith* does not aid the petitioners.

The guardian *ad litem* in his reply brief cites a more closely analogous case. In *In re Petition of Berkowitz* (1967), 88 Ill. App. 2d 1, 232 N.E.2d 72, the court found the petitioner was not a reputable person based on his discharge from employment for forging checks payable to his employer and depositing the funds in his own account. In addition to questions concerning the best interests of the child, the court here would be justified in finding the adoptive father was not a reputable person for the purposes of the Act. In an adoption case, the finding of the trial court will not be disturbed on review unless contrary to the manifest weight of the evidence. (*In re Adoption of Garrison* (1981), 93 Ill. App. 3d 670, 417 N.E.2d 787.) Here the finding of the trial court was not so contrary as to require reversal on review.

■ Petitioners also argue section 16 of the Act provides for waiver of the six-month waiting period in cases where adoption is granted, but not in cases where adoption is denied. (Ill. Rev. Stat. 1985, ch. 40, par. 1520.) As they note in their brief, the law of adoption is strictly statutory and statutes must be strictly complied with. Therefore, adoption may take place only after six months from the awarding of temporary custody as provided by section 14 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 1517), or upon waiver of the six-month period. Here, petitioners specifically waived the waiting period and have no grounds to complain where their petition was denied

within the six-month period.

The cross-appellant Marianne Doan raises an additional issue in her brief. She contends the trial court erred in failing to find her consent to the adoption of her child was void. In the alternative, she argues her consent was limited to adoption by the Neeses.

■ This specific question has come before the appellate court on a previous occasion. In *In re Custody of Mitchell* (1983), 115 Ill. App. 3d 169, 450 N.E.2d 368, the court concluded it was possible for a parent to consent to adoption by a specific party. Section 10 of the Act contains the forms necessary for the natural parents to consent to the adoption of their children. Section 10(A) of the Act is entitled "Final And Irrevocable Consent To Adoption." (Ill. Rev. Stat. 1985, ch. 40, par. 1512(A).) Section 10(C) of the Act is entitled "Final And Irrevocable Surrender For Purposes Of Adoption." (Ill. Rev. Stat. 1985, ch. 40, par. 1512(C).) The difference between these two sections is that section 10(C) contains language indicating the child is surrendered to an agency for adoption at the discretion of the agency. Section 10(A) does not contain this language and indicates the parent is giving consent to a specific adoption. See also discussion in *Johnson v. Burnett* (1989), 182 Ill. App. 3d 574.

The consent form in *Mitchell* was the same as was used here, section 10(A). There, the trial court, as did the trial court here, held the consent acted as a general surrender for adoption and terminated the parental rights completely. The appellate court reversed. The appellate court noted the parent gave his specific consent to an adoption by known parties and did not make a general surrender to a third party or agency for an adoption. The court held the language of section 10(A), which indicates the parent gives up all parental rights, is necessary to effect a transfer of these rights to the adoptive parents. However, this language cannot be read so broadly that it encompasses a complete termination of parental rights where a proposed adoption by a specified known party is not consummated. In order for the statutory structure of section 10 to have any meaning, section 10(A) must be read to provide for irrevocable consent to a specific adoption only. Any other construction of section 10(A) would render it superfluous.

■ In this case, it is clear Marianne Doan gave valid consent for the adoption of her daughter by specified known parties. Although the record shows the consent form signed by Doan did not specifically mention the Neeses and she did not conduct any investigation of them, she had met them briefly and had some knowledge of them. When the circuit court denied the Neeses' petition for adoption, the natural mother's consent to an irrevocable termination of her parental

rights became voidable. For this reason, the trial court erred in denying the natural mother's petition to void her consent. The consent became voidable at the time the petition for adoption was denied and the mother should have been given the opportunity to regain full parental rights. In the absence of a finding of unfitness or the execution of another consent form, the circuit court should have provided for the return of the child to the natural mother.

As the mother here seeks the return of her child and did so in a timely fashion, we need not address the difficult problems that may arise where the natural parents do not wish the return of the child or where a considerable amount of time may pass between the consent and the denial of the petition for adoption. We affirm the circuit court's denial of the petition for adoption, but reverse the trial court's denial of the natural mother's petition to void her consent. We remand and instruct the circuit court to return custody and full parental rights to the natural mother.

Affirmed in part; reversed in part and remanded with directions.

KNECHT and GREEN, JJ., concur.