2022 IL App (1st) 211600

No. 1-21-1600

Opinion Filed: December 23, 2022

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF VERONICA WALTER, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Alleged Person With a Disability | ) | |
| | ) | No. 2019 P 8078 |
| (Beth McCormack, | ) | |
| | ) | The Honorable |
| Petitioner-Appellee, | ) | Jesse Outlaw, |
| | ) | Judge Presiding. |
| v. | ) | |
| Veronica Walter, | ) | |
| | | |
| Respondent-Appellant). | | |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment and
opinion.

**OPINION**

¶ 1    Petitioner, Beth McCormack, filed a petition for appointment of guardianship of

respondent Veronica Walter in the probate division of the circuit court (probate court). The probate

court adjudged Walter as a person with a disability and appointed R&R Guardianship Services as

Walter's guardian *ad litem* for the limited purpose of resolving Walter's marriage dissolution case.

On appeal, Walter raises several issues, including that the probate court lacked jurisdiction, made erroneous evidentiary rulings, made disability adjudication and appointment of a guardian *ad litem* findings that were against the manifest weight of the evidence, and failed to give Walter an opportunity to nominate a guardian *ad litem*. For the following reasons, we affirm the circuit court's finding that respondent was "a person with a disability" under section 11a-2 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-2 (West 2020)), and we remand to the probate division of the circuit court so that a hearing may be held regarding respondent's request to nominate her brother as guardian *ad litem*.

¶ 2                               I. BACKGROUND

¶ 3                    A. Marriage Dissolution Proceedings

¶ 4      In 2014, Joseph Tener filed a petition for dissolution of marriage from Walter. During the next several years, Walter was represented by four different lawyers. In 2018, Walter requested to proceed *pro se* in the dissolution proceeding. After growing concern that Walter did not have the mental capacity to participate in the proceedings, the judge in the dissolution proceeding (dissolution judge) ordered a medical examination to determine whether Walter was competent to represent herself. Dr. Louis Kraus evaluated Walter and opined that she was delusional, extremely paranoid, and severely disabled. After reviewing Dr. Kraus's medical report, the dissolution judge appointed McCormack as Walter's guardian *ad litem* and ordered McCormack to file a petition for the appointment of guardianship in probate court.

¶ 5                         B. Probate Proceedings

¶ 6                                         1. Pretrial

¶ 7     In 2019, McCormack filed a petition for appointment of guardian of a person with a disability in the probate court. The court appointed Susan DeCostanza as Walter's guardian *ad litem* in the probate proceedings.

¶ 8     In August 2020, Walter filed a motion *in limine* to exclude the admission of Dr. Kraus's medical report. The court never ruled on the motion, and neither party requested a ruling. McCormack filed an emergency motion for medical evaluation to obtain a report of physician. The court granted the motion and permitted McCormack to coordinate the evaluation. McCormack retained Dr. Geoffrey Shaw, who conducted an independent medical examination on Walter. After the examination, Dr. Shaw created a report of his findings and conclusions and opined that Walter was unable to make well-reasoned decisions in her best interest and needed a limited guardian *ad litem* of her person and estate in the dissolution proceeding.

¶ 9     Walter hired Dr. Monica Argumedo to conduct a medical examination. After the examination, Dr. Argumedo created a report of her findings and conclusions. She opined that Walter was competent to manage her person and financial affairs without a guardian *ad litem*.

¶ 10    In December 2020, McCormack filed an amended petition for guardianship that alleged Walter "is a person with a disability due to Delusional Disorder and because of that disability (a) lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of the Respondent's person; [and] (b) is unable to manage the Respondent's estate or financial affairs." The amended petition included Dr. Shaw's medical report.

¶ 11 In January 2021, Walter filed a motion for summary judgment arguing that Dr. Shaw's and Dr. Argumedo's conflicting medical opinions showed that McCormack could not prove by clear and convincing evidence that Walter was a person with a disability. The circuit court denied the motion arguing that the conflicting expert opinions created a genuine issue of material fact. Walter also moved to dismiss the petition based on lack of jurisdiction because McCormack failed to serve notice to six of Walter's nine siblings. At the hearing on the motion, McCormack and DeCostanza informed the court about their unsuccessful efforts to find and serve notice to Walker's siblings. McCormack asked Walter for her siblings' contact information, and Walter informed her that she did not have their information. McCormack was able to contact one sibling, Kenneth Walter (Kenneth). Kenneth provided his address but refused to provide any additional contact information for the other siblings. With the help of DeCostanza, McCormack learned that three of the siblings worked for the same employer. DeCostanza called the employer, verified that the siblings worked there and left a message. However, DeCostanza never received a return call. McCormack, with leave of the court, posted three notices of the plenary petition for guardianship in the Chicago Daily Law Bulletin, and McCormack was able to get the contact information for one other sibling, Rita Walter (Rita).

¶ 12 In February 2021, McCormack filed a second amended petition for the purpose of amending the notice form to include the names of Walter's living siblings and the addresses of Kenneth and Rita. The court determined that service via publication was sufficient notice.

¶ 13                          2. Trial

¶ 14    At trial, DeCostanza detailed the difficulties she faced in her efforts to contact Walter because Walter did not answer DeCostanza's phone calls. One day, DeCostanza went to Walter's home and found duct tape over the doorbell. DeCostanza knocked on the door and received no response. She tried to put a note in the mail slot but found it sealed and left a note by the door. About four months after the court appointed DeCostanza as guardian *ad litem*, and after Walter hired an attorney for the probate court proceedings, DeCostanza interviewed Walter. After the interview, DeCostanza, relying on Dr. Shaw's medical opinion, recommended appointment of a guardian with authority limited to facilitating the settlement of the marriage dissolution case.

¶ 15    McCormack testified that she met with Walter on several occasions. During those times, Walter's behavior was unpredictable. Walter was either kind to McCormack or yelled and accused McCormack of lying. McCormack also had difficulty scheduling appointments with Walter. In May 2019, Walter and Tener reached a proposed settlement agreement that was "very much in her favor." McCormack testified that she based her opinion about the desirability of the settlement on the opinion of the attorney representing Walter in dissolution proceeding. Between May 2019 and October 2019, Walter's dissolution attorney urged her to accept the proposed settlement but she refused. McCormack admitted she had "no independent recollection of the specifics" of whether she discussed the written settlement offer with Walter. McCormack recommended the appointment of a guardian with authority limited to facilitating the settlement of the dissolution case.

¶ 16    Walter testified that McCormack and her divorce attorney never showed her the proposed divorce settlement. She knew she was married to Tener and sought a divorce but did not remember

the date or year that she got married. Walter also did not remember how many attorneys she had in the dissolution proceeding.

¶ 17     Tener testified that while Walter took care of her finances and daily needs, he assisted her with grocery shopping, paying bills, and home maintenance. To the best of Tener's knowledge, Walter had not taken medication for five years. Walter distrusted people and refused to allow guests in her home except for Tener. She complained about stomach pains and her eyesight but refused to see a doctor. When asked if Walter would benefit from having a guardian, Tener stated, "I am not sure. Maybe it would go a little smoother if she had a guardian. I think—At this point I think she's willing to come to an agreement, and I think we can get it done without a guardian really."

¶ 18     Dr. Shaw, a psychiatrist, testified that he interviewed Walter. Based on that interview and the reports of Dr. Jansons, a psychologist who conducted a neuropsychological examination on Walter, and Dr. Kraus, he concluded that Walter suffered from a delusional disorder that impaired her executive functioning. Dr. Shaw identified two beliefs as the basis for his diagnosis. First, Walter believed that she was not married under the catholic doctrine because she and Tener did not have children. Second, Walter believed that Dr. Kraus intentionally set up his office "in a manner to cause discomfort or unpleasantness to his patients." Dr. Shaw also testified that Walter displayed signs of grandiosity and concluded that Walter had a psychiatric condition. He explained that Walter's belief that her handwritten notes should be incorporated into a curriculum for

physicians and law students exemplified a level of grandiosity because she thought her notes were so important that they should be incorporated in an area where she lacked training or knowledge.

¶ 19    Dr. Shaw further testified that, at the start of the interview, Walter handed him a gift of rosary beads. He found the gift showed impairment of her executive functioning because "she was disinhibited and impulsive in doing so with no real comprehension that this simple act could be positively portrayed by somebody like me or negatively. I mean, it was her lack of awareness as to how her act could or might be p[erceiv]ed by me." He recommended the appointment of a guardian with authority limited to facilitating the settlement of the dissolution case.

¶ 20    Dr. Argumedo testified that she read the reports from Dr. Shaw, Dr. Kraus, and Dr. Jansons, and she interviewed Walter. At the start of the interview, Walter gave Dr. Argumedo a rosary. Walter explained that she worked with nuns and helped them by buying rosaries from them. She gave away many of the rosaries she purchased.

¶ 21    Dr. Argumedo noted that according to Dr. Jansons, "Walter scored well on the executive functioning test and did not [show] deficits in executive functioning." Dr. Argumedo disagreed with Dr. Shaw's conclusion that Walter suffered from impaired executive functioning, but Dr. Argumedo agreed with Dr. Jansons report that Walter did not "suffer[ ] from any cognitive issues that would affect her capacity to manage her own personal and financial affairs." Dr. Argumedo defined delusional disorder as "a false fixed belief" and explained that patients with delusional disorders "don't appear odd in any way. So they tend to be people that you wouldn't know

otherwise until you hit on that one issue. *** And this is kind of the opposite here." Dr. Argumedo noted that Walter behaved oddly in many ways.

¶ 22    Dr. Argumedo testified that Walter knew she was married to Tener. Walter explained to Dr. Argumedo her discomfort in Dr. Kraus's office, which related to her medical history. Walter informed Dr. Argumedo that, at a golf tournament in the early 1990s, Walter fell when lightning struck a building near the golf course, and the lightning adversely affected her hearing and balance. According to Dr. Argumedo, Walter "said that since the lightning strike, that she had difficulties with sensory perception so that things were often overwhelming as far as—particularly smells, but sounds. And that restricted her in being able to go to certain places, particularly places where there were a lot of sounds or noises or a lot of people around." She found Dr. Kraus's office overwhelming.

¶ 23    After the lightning strike, doctors treated Walter, and some "considered possibly bipolar disorder. So as a result she was started on a lot of different psychotropic medications, including antidepressants and *** she really struggled with the side effects of those medications." Walter mostly lived off her disability income since the lightning strike. Dr. Argumedo found Walter did not suffer from any mental illness, and she remained fully competent to manage her personal and financial affairs.

¶ 24    Relying on Dr. Shaw's testimony, the probate court found that Walter lacked executive functioning that impaired her decision-making skills and that her diagnoses of delusional disorder and bipolar disorder "substantiates her disability." The court acknowledged Dr. Argumedo's

conflicting expert testimony but found Dr. Shaw more credible based on his experience and credentials. The court found credible McCormack's testimony that Walter did not understand the settlement negotiations and refused to settle even though the agreement was in her favor. The court also found credible DeCostanza's testimony that Walter refused to cooperate with her regarding the dissolution proceeding. The court considered Walter's testimony and noted that she could not remember certain details, such as when she married, how many attorneys she had during the dissolution proceeding, and whether Dr. Shaw evaluated her. The court held that Walter was "partially capable of making personal and financial decisions" and required a limited guardian *ad litem* in the dissolution proceeding. The court appointed R&R Guardianship Services as Walter's limited guardian *ad litem*.

¶ 25                    C. Nomination for Guardianship Hearing

¶ 26    In December 2021, Walter asked for leave to file a nomination for guardianship. The trial court granted leave to file, and Walter nominated her brother, Kenneth, to serve as her limited guardian *ad litem*. When the parties met to argue the motion, the court held that Walter could not seek a new appointment of guardianship after the appointment of R&R Guardianship Services unless that guardian agreed to withdraw or Walter sought removal and the court conducted proper removal proceedings. Hence, the court denied Walter's request to nominate guardian *ad litem*. Walter now appeals.

¶ 27                    II. ANALYSIS

¶ 28     On appeal, Walter argues that (1) McCormack failed to comply with a statutory notice requirement, (2) McCormack did not have standing to bring the original petition for appointment of guardian *ad litem* and the subsequent amendments, (3) the circuit court erred by denying Walter's motion for summary judgment, (4) the circuit court improperly considered Dr. Kraus's medical report in its appointment of guardianship determination, (5) the circuit court's disability adjudication and appointment of guardianship findings were against the manifest weight of the evidence, and (6) the circuit court failed to provide Walter with a meaningful opportunity to nominate a guardian *ad litem*.

¶ 29     "The adjudication of disability is a uniquely factual question which is to be made by the trial court and will not be disturbed upon review unless the trial court's findings are contrary to the manifest weight of the evidence." *In re Estate of Barr*, 142 Ill. App. 3d 428, 433 (1986). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). A reviewing court will not substitute its judgment for that of the circuit court regarding the credibility of witnesses, the weight to be given the evidence, or the inferences to be drawn. *Id.* at 350-51.

¶ 30     The probate court has broad discretion in determining whether to appoint a guardian. *In re Estate of Green*, 359 Ill. App. 3d 730, 735 (2005). " 'This discretion is not unlimited and will be overturned if the reviewing court finds that the [court] abused its discretion' [citation], or if its decision is against the manifest weight of the evidence \*\*\*." *Id.* at 735.

¶ 31                                    A. Notice

¶ 32    Walter contends that McCormack failed to provide actual notice to Walter's adult siblings in accordance with section 11a-10(f) of the Probate Act (755 ILCS 5/11a-10(f) (West 2020)). Walter asserts that, because of McCormack's failure, the circuit court lacked subject matter jurisdiction to enter judgment adjudicating Walter as a person with a disability and appointing a guardian *ad litem*. McCormack argues that she provided notice to all of Walter's "known and reasonably ascertainable" adult siblings as required under section 11a-10(f), and therefore, the court had subject matter jurisdiction.

¶ 33    Walter does not contest the validity of McCormack's latest filing, the second amended petition. Hence, we consider whether McCormack provided sufficient notice of the second amended petition.

¶ 34    Section 11a-8 of the Probate Act prescribes certain information that must be stated in a petition for adjudication of disability and for appointment of guardianship. 755 ILCS 5/11a-8 (West 2020). Pertinent here, section 11a-8(e) provides that the petition "must state, if known or reasonably ascertainable: *** (e) the name and post office addresses of the nearest relatives of the respondent in the following order: (1) spouse and adult children, parents and adult brothers and sisters, if any." 755 ILCS 5/11a-8(e) (West 2020). Section 11a-10 governs the petition's notice procedures. 755 ILCS 5/11a-10 (West 2020). It provides, in relevant part, that the petitioner must give notice of "the time and place of the hearing *** by mail or in person to those persons,

including the proposed guardian, whose names and addresses appear in the petition and who do not waive notice, not less than 14 days before the hearing." 755 ILCS 5/11a-10(f) (West 2020).

¶ 35    The evidence reveals that, at the January 2021 hearing, McCormack stated that she had been trying to locate Walter's nine siblings. McCormack asked Walter for her siblings' contact information, but Walter did not have it. McCormack was able to contact one sibling, Kenneth. Kenneth provided his address but refused to provide any additional contact information for the other siblings. With the help of DeCostanza, McCormack learned that three of the siblings worked for the same employer. DeCostanza called the employer, verified that the siblings worked there, and left a message. However, she never received a return call. McCormack also posted three notices of the plenary petition for guardianship in the Chicago Daily Law Bulletin and was able to get the contact information for one other sibling, Rita. Rita's and Kenneth's names and addresses appeared in the second amended petition. McCormack gave notice to Kenneth and Rita by mail. Considering these facts, we find that the petition sufficiently listed all relatives, including Walter's adult siblings, who were known or reasonably ascertainable to petitioner in accordance with sections 11a-8(e) and 11a-10(f).

¶ 36    We note that our supreme court's decisions in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002), and *People v. Castleberry*, 2015 IL 116916, distinguished statutory authority and jurisdictional authority conferred by the constitution. In *Belleville Toyota, Inc.*, the supreme court stated:

"Characterizing the requirements of a statutory cause of action as nonwaivable conditions precedent to a court's exercise of jurisdiction is merely another way of saying that the circuit court may only exercise that jurisdiction which the legislature allows. We reiterate, however, that the jurisdiction of the circuit court is conferred by the constitution, not the legislature. Only in the area of administrative review is the court's power to adjudicate controlled by the legislature." *Belleville Toyota, Inc.*, 199 Ill. 2d at 336.

Thus, if the circuit court has proper jurisdiction under the constitution, a statutory violation does not divest the court's jurisdiction over the entry of judgment of disability adjudication and appointment of guardianship. See *In re G.L.*, 133 Ill. App. 3d 1048, 1052 (1985) (holding that the question of whether an individual received statutory notice is "jurisdictionally insignificant").

¶ 37    Here, McCormack established subject matter jurisdiction because the petition alleges a definite and concrete controversy under the Probate Act. See Ill. Const. 1970, art. VI, § 9 (the jurisdiction of the circuit court extends to "all justiciable matters"); *Belleville Toyota, Inc.*, 199 Ill. 2d at 335 (a justiciable matter is a "controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests"); *Goodwin v. Matthews*, 2018 IL App (1st) 172141, ¶ 20. Therefore, the circuit court had subject matter jurisdiction in this case.

¶ 38                                    B. Standing

¶ 39    Walter argues that the circuit court in the marriage dissolution proceeding did not have authority to appoint McCormack as her guardian *ad litem* and, consequently, McCormack did not have standing to file the original petition for appointment of guardianship and the subsequent amendments. McCormack alleges that she had statutory standing to file the petition because her legal experience and credentials made her a "reputable person" under section 11a-3 of the Probate Act (755 ILCS 5/11a-3 (West 2020)).

¶ 40    Section 11a-3(a) governs the filing of the petition for adjudication of disability and appointment of guardian. It provides:

> "Upon the filing of a petition by a reputable person or by the alleged person with a disability himself or on its own motion, the court may adjudge a person to be a person with a disability, but only if it has been demonstrated by clear and convincing evidence that the person is a person with a disability as defined in Section 11a-2." 755 ILCS 5/11a-3(a) (West 2020).

¶ 41    Section 11a-3(a) allows a "reputable person" to file a petition. The statute does not define the term. Thus, we must use the rules of statutory construction to construe the meaning of "reputable person" under section 11a-3(a). In construing a statute, the goal of the court is to ascertain and effectuate the intent of the legislature in enacting the provision. *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 17. The statutory language, given its plain and ordinary meaning, is generally the most reliable indicator of that legislative intent. *Id.* Where the meaning of the statute is unclear from a reading of its language, courts may look beyond the statutory

language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute. *Johnston v. Weil*, 241 Ill. 2d 169, 175-76 (2011). The issue of statutory construction is a question of law, and our review is *de novo*. *Id.* at 176.

¶ 42    McCormack relies on *Nees v. Doan*, 185 Ill. App. 3d 122 (1989), and *In re Petition of Berkowitz*, 88 Ill. App. 2d 1 (1967), to support her argument that she was a "reputable person" under section 11a-3(a). In *Nees*, the court held that the petitioner was not a "reputable person" under the Adoption Act due to his criminal history, his continued pattern of deception, and his employment instability. *Nees*, 185 Ill. App. 3d at 126-27. In *Berkowitz*, the court held that petitioner was not a reputable person under the Adoption Act because of his discharge from employment for committing forgery. *Berkowitz*, 88 Ill. App. 2d 1. Both *Nees* and *Berkowitz* demonstrate that a person's character traits, rather than legal status, determine whether he is a "reputable person."

¶ 43    We believe the rationale in *Nees* and *Berkowitz* is applicable here. First, although *Nees* and *Berkowitz* involve adoption proceedings, our supreme court held that "[i]n construing the provisions of a statute[,] it is not only proper, but often necessary, to consider the provisions of other statutes relating to the same subject matter for the purpose of determining legislative intent." *Petterson v. City of Naperville*, 9 Ill. 2d 233, 243 (1956). Second, the plain language of section 11a-3 does not limit "reputable person" to a person's status as guardian *ad litem*. Third, the rationale in *Nees* and *Berkowitz* aligns with the Probate Act's provision that the statute be liberally

construed. 755 ILCS 5/1-9 (West 2020). Therefore, we find that a "reputable person" under section 11a-3 pertains to a person's character.

¶ 44    Here, the record shows that McCormack had been practicing family law for 29 years and, for over 20 years, has been a guardian or appointed representative about 20 times each year. The record is devoid of any evidence that McCormack has any traits that reflect negatively on her character. Therefore, we find that, albeit her status as the guardian *ad litem*, petitioner had statutory standing to file the petition under section 11a-3(a). Consequently, we need not address the circuit court's authority to appoint McCormack in the marriage dissolution proceedings.

¶ 45                                    C. Motion for Summary Judgment

¶ 46    Walter argues that the circuit court erred by dismissing her motion for summary judgment. Specifically, Walter asserts that no genuine issue of fact exists where the two medical experts, Dr. Shaw and Dr. Argumedo, provided conflicting opinions on whether Walter was a person with a disability. Walter claims that the conflicting opinions made it "legally impossible" for McCormack to show by clear and convincing evidence that Walter was a person with a disability.

¶ 47    Generally, when a motion for summary judgment is denied and the case proceeds to trial, the denial of summary judgment is not reviewable on appeal because the result of any error is merged into the judgment entered at trial. *Belleville Toyota, Inc.*, 199 Ill. 2d at 355. "The rationale for this rule is that review of the denial order would be unjust to the prevailing party, who obtained a judgment after a more complete presentation of the evidence." *Id.* at 355-56. "But where the issue raised in the summary judgment motion is one of law and would not be before the jury at

trial, the order denying the motion does not merge and may be reviewed by the appellate court." *Labate v. Data Forms, Inc.*, 288 Ill. App. 3d 738, 740 (1997); see *Belleville Toyota*, 199 Ill. 2d at 355.

¶ 48    This court has held that conflicting expert opinions demonstrate that factual issues exist. *Nicholas v. City of Alton*, 107 Ill. App. 3d 404, 408 (1982) (finding the court's grant of summary judgment improper where conflicting expert opinions demonstrated factual issues existed). Furthermore, it is well-established that the trier of fact considers the weight to be given to conflicting expert opinions. *Walski v. Tiesenga*, 72 Ill. 2d 249, 260 (1978); *Dabros v. Wang*, 243 Ill. App. 3d 259, 264 (1993); *Jarke v. Jackson Products, Inc.*, 282 Ill. App. 3d 292, 300 (1996).

¶ 49    We find that the conflicting expert medical opinions regarding whether Walter was a person with a disability is an issue of fact. Accordingly, any errors resulting from the circuit court's denial of the motion for summary judgment are merged into the trial and not reviewable on appeal.

¶ 50          D. The Circuit Court's Consideration of Dr. Kraus's Medical Report

¶ 51    Walter alleges that the circuit court abused its discretion when it considered Dr. Kraus's medical report in its disability adjudication finding because the report was never admitted into evidence. McCormack claims that Walter forfeited this issue where she did not object or file a posttrial motion and where Walter elicited testimony about the report during trial. McCormack also argues that the court properly considered Dr. Kraus's report under Illinois Rules of Evidence 703 (eff. Jan. 1, 2011).

¶ 52    We agree with McCormack that Walter has forfeited this issue. Generally, to preserve an issue for review, a defendant must both object at trial and raise the issue in a written posttrial motion. *People v. Lewis*, 223 Ill. 2d 393, 400 (2006). Although Walter filed a motion *in limine* to exclude Dr. Kraus's report, the circuit court never ruled on the motion and the case proceeded to trial. Walter never objected to the use of the report at trial and did not file a posttrial motion on the issue. See *People v. Rossi*, 52 Ill. 2d 13, 17 (1972) ("The failure of a trial court to rule on objections to evidence is not open to review at the instance of one who failed to request a ruling when the court did not make one, or in some other manner pointed out to the trial judge his failure to act."). Furthermore, Walter elicited testimony regarding the report during trial. "A party cannot complain of error which he induced the court to make or to which he consented." *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000).

¶ 53    Even considering Walter's argument, we believe the circuit court's reliance on Dr. Shaw's opinion, which was based in part on Dr. Kraus's report, was proper. The parties agree that the medical experts' reliance on Dr. Kraus's report when formulating their opinions was proper under Illinois Rule of Evidence 703 (eff. Jan. 1, 2011) ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."). Moreover, whether the circuit court placed "significant reliance" on Dr. Shaw's bases, which included Dr. Kraus's report, is a proper consideration for the trier of fact, who determines

the weight given to the testimony. See *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006) ("The weight to be given the witnesses' testimony, the credibility of the witnesses, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact."). Thus, the circuit court's consideration of Dr. Kraus's report in its findings was not an abuse of discretion.

¶ 54        E. The Adjudication of Disability and Appointment of Guardian *Ad Litem*

¶ 55    Walter argues that the circuit court's finding that she was a "person with a disability" under section 11a-2 of the Probate Act (755 ILCS 5/11a-2 (West 2020)) was against the manifest weight of the evidence because Dr. Shaw and Dr. Argumedo had conflicting medical opinions and the lay witnesses provided no factual support for Dr. Shaw's medical expert testimony. McCormack claims that the circuit court's finding was not against the manifest weight of the evidence and Walter improperly requests that this court reweigh the court's findings.

¶ 56    The circuit court may adjudge a person to be a person with a disability. 755 ILCS 5/11a-3 (West 2020). Section 11a-2 defines a "person with a disability" as

> "a person 18 years or older who (a) because of mental deterioration or physical incapacity is not fully able to manage his person or estate, (b) is a person with mental illness or a person with a developmental disability and who because of his mental illness or developmental disability is not fully able to manage his person or estate, or (c) because of gambling, idleness, debauchery, or excessive use of intoxicants or drugs, so spends or wastes his estate as to expose himself or his

family to want or suffering, or (d) is diagnosed with fetal alcohol syndrome or fetal alcohol effects." 755 ILCS 5/11a-2 (West 2020).

¶ 57    If the court adjudges a person to be a person with a disability, the court may appoint the following:

"(1) a guardian of his person, if it has been demonstrated by clear and convincing evidence that because of his disability he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person, or (2) a guardian of his estate, if it has been demonstrated by clear and convincing evidence that because of his disability he is unable to manage his estate or financial affairs, or (3) a guardian of his person and of his estate." 755 ILCS 5/11a-3(a) (West 2020).

¶ 58    Here, the evidence supports the trial court's finding that Walter had a mental illness under section 11a-2(b). Dr. Shaw testified that Walter's delusional disorder caused her to lack executive functioning when making well-reasoned decisions. Dr. Shaw provided two bases for his belief that Walter suffered from delusional disorder. First, Walter believed that she was not married under the catholic doctrine because she and Tener did not have children. Second, Walter believed Dr. Kraus intentionally set up his office "in a manner to cause discomfort or unpleasantness to his patients."  Dr. Shaw also opined that Walter had a psychiatric condition because she exhibited signs of disinhibition, grandiosity, and bizarre ideation. For instance, Walter believed her handwritten notes should be incorporated into a curriculum for physicians and law students.

Walter's belief showed a level of grandiosity because she believed her notes were so important that they should be incorporated in an area where she lacked training or knowledge. Dr. Shaw also found that Walter's rosery bead gift showed impairment of her executive functioning because her decision was impulsive and she did not comprehend how her decision may be negatively received by Dr. Shaw.

¶ 59 Tener testified that Walter distrusted people and refused to let guests into her home for the past five years. Walter complained of stomach pains and eyesight problems but refused to seek medical assistance. DeCostanza testified that she had difficulty getting in contact with Walter about her divorce settlement. Walter was not answering DeCostanza's phone calls and would not answer her door when DeCostanza went to her home. McCormack testified that Walter's behavior was unpredictable. Walter was either kind to McCormack or yelled and accused McCormack of lying.

¶ 60 Although Dr. Argumedo opined that Walter did not exhibit "deficits in executive functioning," the circuit court, being in the best position to assess a witness's credibility and demeanor, found Dr. Shaw more credible based on his experience handling guardianship evaluations. See *Greene v. City of Chicago*, 73 Ill. 2d 100, 110 (1978) ("especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof").

¶ 61    Additionally, the evidence reveals that, due to Walter's mental illness, she was unable to manage her estate and financial affairs pertaining to the marriage dissolution case. Tener testified that he assisted Walter with general home maintenance and tasks such as grocery shopping and paying bills. During the marriage dissolution proceeding, Walter went through several lawyers but did not remember how many attorneys she had in the marriage dissolution proceeding. McCormack testified that, in May 2019, Walter and Tener reached a proposed settlement agreement that was "very much in her favor" but she refused to accept the agreement.

¶ 62    The evidence indicates that Walter had a mental illness and that she was unable to manage her financial affairs. Thus, we hold that the circuit court's order adjudicating Walter disabled and appointing a guardian *ad litem* for the limited purpose of resolving Walter's marriage dissolution case was not against the manifest weight of the evidence.

¶ 63                        F. Guardianship Nomination

¶ 64    Walter argues that the circuit court failed to provide her with a meaningful opportunity to exercise her right to nominate a guardian *ad litem* under section 11a-12 of the Probate Act (755 ILCS 5/11a-12 (West 2020)). McCormack asserts that Walter cannot argue that she did not have an opportunity to exercise her nomination because she failed to nominate a guardian before the court appointed R&R Guardianship Services as guardian *ad litem*. McCormack also contends that section 11a-12 does not permit Walter to nominate a guardian after the appointment of R&R Guardianship Services.

¶ 65    The record reveals that, before R&R Guardianship Services was appointed guardian *ad litem*, Walter had not expressed her nomination for guardian. After the circuit court appointed R&R Guardianship Services, Walter asked for leave to file a nomination to appoint her brother, Kenneth, as guardian, which the court granted. At the hearing, the circuit court held that Walter could not seek a new appointment of guardianship unless she filed a removal citation to commence removal proceedings. On appeal, the parties dispute whether the Probate Act allows the circuit court to consider Walter's nomination for guardian after a guardian has been appointed. We turn to the rules of statutory construction to determine whether the Probate Act allows for the appointment of guardianship in this circumstance.

¶ 66    As previously stated, in construing a statute, the goal of the court is to ascertain and effectuate the intent of the legislature in enacting the provision. *Cassidy*, 2018 IL 122873, ¶ 17. The statutory language, given its plain and ordinary meaning, is generally the most reliable indicator of that legislative intent. *Id.* The issue of statutory construction is a question of law, and our review is *de novo*. *Johnston*, 241 Ill. 2d at 176.

¶ 67    Section 11a-12 of the Probate Act governs the circuit court's order of appointment of guardian *ad litem* after a person is adjudged a person with a disability. See 755 ILCS 5/11a-15 (West 2020). Subsection (d) provides:

"The selection of the guardian shall be in the discretion of the court, which shall give due consideration to the preference of the person with a disability as to a guardian, as well as the qualifications, of the proposed guardian, in making its

appointment. However, the paramount concern in the selection of the guardian is the best interests and well-being of the person with a disability." 755 ILCS 5/11a-12(d) (West 2020).

¶ 68     The record shows that the circuit court found that it had no authority to reconsider its guardianship order that appointed R&R Guardianship Services and consider whether Walter's proposal that her brother be appointed be accepted instead. The guardianship order entered was a judgment entered in a non-jury case. Our Code of Civil Procedure provides that:

"In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203 (West 2020).

The order appointing R&R Guardianship Services as guardian was entered on November 29, 2021. Walter filed her nomination to appoint her brother on December 2, 2021. The motion suggesting an alternative guardian was clearly a request that the judgment be modified. See *In re Estate of K.E.J.*, 382 Ill. App. 3d 401, 423-24 (2008) (concluding that a motion asking for the return of attorney fees to an estate was a motion "directed against" the judgment under section 2-1203 because it sought a material change in the terms of the judgment). The motion was timely filed within 30 days of the guardianship judgment.

¶ 69 The record suggests that the judge believed that Kenneth might be a better guardian but that he could not reconsider that appointment unless Walter filed a removal citation. After Kenneth addressed the court, the judge stated,

"I see a family member come forward and willing to act on behalf of a family member and someone that certainly has my ward's best interests at heart; but there, procedurally, *** my hands are locked at this particular time. There's not a great deal I can do to undo what I've already done. *** I apologize. I wish I could undo what I've done."

¶ 70 Our supreme court has ruled that reversable error can exist when a circuit court has refused to exercise discretion "in the erroneous belief that it has no discretion as to the question presented." *People v. Queen*, 56 Ill. 2d 560, 565 (1974).

¶ 71 Here, the trial court believed it had no discretion to reconsider its order appointing R&R Guardianship Services, but the court did have such discretion. Hence, we find that the circuit court abused its discretion by failing to exercise discretion. *Id.*

¶ 72 In light of the court's findings, we hold that Walter was not given a meaningful opportunity to exercise her right to suggest the nomination of a guardian *ad litem* due to the circuit court's mistaken belief that it could not reconsider its appointment of R&R Guardianship Services. We remand for the circuit court to hold a hearing on Walter's request that the guardianship order be amended to nominate her brother for the limited purpose of resolving her marriage dissolution case.

¶ 73                                  III. CONCLUSION

¶ 74    We find that McCormack had standing to bring the petition for appointment of guardian *ad litem* and provided sufficient notice to all known or reasonably ascertainable next of kin in accordance with the Probate Act. We also find that the circuit court properly considered Dr. Kraus's medical report in the disability adjudication determination and the court's ultimate findings of disability and appointment of guardianship were not against the manifest weight of the evidence. However, we find the circuit court abused its discretion when it found that it had no authority to reconsider its guardianship order and appoint Walter's brother as her guardian. Hence, the court did not provide Walter with a meaningful opportunity to exercise her nomination for guardian *ad litem*, and we remand to the circuit court for a hearing on Walter's request to nominate her brother. We declined to address Walter's motion for summary judgment argument where any alleged errors merged into the final judgment. Accordingly, we affirm the circuit court's finding that Walter is a person with a disability, we reverse the order finding that the court had no authority to reconsider its guardianship order, and we remand to the circuit court with directions.

¶ 75    Affirmed in part and reversed in part; cause remanded.

---

***In re Estate of Walter*, 2022 IL App (1st) 211600**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-P-8078; the Hon. Jesse Outlaw, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jerome W. Pinderski Jr., of Pinderski & Pinderski, Ltd., of Palatine, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Leynee C. Flores, Jonathan D. Morton, and Toni J. Falligant, of Golan Christie Taglia LLP, of Chicago, for appellee. |

---